Felice **NAPOLITANO**, Plaintiff-Appellee,

v.

**COMPANIA SUD AMERICANA DE VA-PORES**, also known as Chilean Line, Defendant-Appellant.

Felice **NAPOLITANO**, Plaintiff-Appellee,

v.

**COMPANIA SUD AMERICANA DE VA-PORES**, also known as Chilean Line, Defendant-Appellant.

Nos. 325 and 326,
Dockets 33960 and 33961.

United States Court of Appeals
Second Circuit.

Argued Dec. 3, 1969.
Decided Jan. 26, 1970.

Martin Lassoff, Zimmerman & Zimmerman, New York City, for appellee.

George S. Evans, John L. Quinlan, Bigham, Englar, Jones & Houston, New York City, for appellant.

Before WATERMAN, HAYS and FEINBERG, Circuit Judges.

WATERMAN, Circuit Judge:

Plaintiff-appellee, a longshoreman, commenced two actions against the defendant shipowner seeking to recover damages for personal injuries received on two separate occasions while working aboard defendant's vessels. After jury trials held one week apart judgments were rendered in plaintiff's favor in both cases by the United States District Court for the Southern District of New York.

In the first case, Docket Number 33960 (hereinafter case one), plaintiff alleged that in 1963 he slipped on a newspaper which he claimed covered spilled oil or grease, and fell to the deck while loading cargo aboard the defendant's ship, SS COPIAPO, and that an injury to his left shoulder resulted. Suit was commenced March 30, 1965, but trial was not until June 17, 1969.

In the second case, Docket Number 33961 (hereinafter case two), plaintiff slipped from a Jacob's ladder (a rope ladder with wooden rungs), which was rigged to enable plaintiff and others to disembark from defendant's vessel SS MAIPO to a lighter (a large boat used to load and unload ships and to transport freight about a harbor) lying alongside. The cause of plaintiff's fall to the deck of the lighter, and the subsequent injury to his right shoulder, was allegedly the presence of oil or grease on a rung located about six rungs from the bottom of the ladder. This accident occurred in early 1965; suit was commenced on June 28, 1965; and the trial was held on June 24, 1969.

Defendant-appellant raises similar issues in both appeals, and we treat both cases in this opinion. The defendant claims (1) the injuries sustained by the plaintiff were the result of his own negligence in both accidents; (2) the evidence as to the existence of grease or oil under the newspapers in case one, and on the ladder rung in case two, was insufficient to establish either negligence or unseaworthiness; (3) the juries' assessments of damages in both cases were excessive; (4) the trial judge abused his discretion by denying the defendant's request for a recess to await the arrival in court of a medical witness in case one, and abused it in case two by refusing to allow defendant to produce witnesses not named in its pre-trial memorandum; and (5) the court's intemperate remarks in both cases prevented defendant from receiving fair trials. Somewhat reluctantly we do not regard any of these contentions, viewed singly or in combination, sufficient to warrant a reversal and new trial in either case, and therefore affirm the judgments.

I.

The defendant argues that the plaintiff should be denied any relief because the plaintiff in case one was aware that several newspapers were strewn about the deck where he was working and he did not exercise reasonable care for his own safety by failing to discover that the papers were covering spilled oil or grease, if in fact there were any to cover. The same contention, that plaintiff failed to exercise reasonable care, is advanced in case two, the claim there being that the plaintiff was careless in not determining the surface conditions of each rung as he descended the Jacob's ladder. Putting to one side the issue as to whether credible evidence that these were the operative facts in the cases would constitute contributory negligence as a matter of law, it has long been settled that the contributory negligence of a plaintiff-longshoreman does not bar relief if the shipowner is negligent but is only to be considered in mitigation of plaintiff's recoverable damages. Palermo v. Luckenbach S.S. Co., 355 U.S. 20, 78 S.Ct. 1, 2 L.Ed.2d 3 (1958); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 408–409, 74 S.Ct. 202, 98 L.Ed. 143 (1953); The Max

Morris, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586 (1890). The district court correctly instructed the jury as to the applicable law. No objection was made to the charge as given, and we perceive no grounds for one.

## II.

■ Defendant's next contention, that in neither case was there sufficient evidence of the presence of oil or grease to hold the defendant liable, is meritless. Several witnesses in each case offered testimony to support plaintiff's claims that oil or grease was found on the underside of the newspaper and on the rung of the ladder. The weight to be given their testimony and the appraisal of any inconsistencies in their accounts of the occurrences were matters to be resolved by the jurors.

## III.

■ Plaintiff, who is left-handed, received a contusion and sprain of his left shoulder as a result of the first accident (case one). He was out of work for six or seven weeks. After the date of this injury in 1963, the plaintiff, especially during weather changes and in the morning after waking, had experienced intermittent pain and discomfort. At the time of trial plaintiff had a life expectancy of approximately ten years, and medical testimony revealed that the plaintiff had lost about ten per cent of the functional use of his left arm. The jury awarded $15,000 in damages. The defendant claims that this amount was excessive.

The jury's award represents well under three dollars a day for pain and suffering and loss of mobility, an amount we do not consider to be unreasonable. Cf. Tarabocchia v. Zim Israel Navigation Co., Ltd., 417 F.2d 476 (2 Cir. 1969).

■ Defendant's claim that the damages awarded the plaintiff for his second accident (case two) were excessive is similarly without merit. Plaintiff there suffered contusions and sprains of his right shoulder and lower back in addition to contusions and abrasions of his right elbow. Further, by this accident, plaintiff lost fifteen per cent of the functional use of his right arm, and he has undergone intermittent pain and stiffness since the injury. For this the jury awarded the plaintiff $7,500, an award that does not shock our conscience.

## IV.

■ The testimony of witnesses in case one started about 10:30 A.M. and concluded at 12:20 P.M. At that point defense counsel informed the court that a defense medical witness would not be available to testify until two o'clock that afternoon. Judge MacMahon refused to delay the proceedings to accommodate the defense witness and ordered counsel to sum up.[1] The case was shortly thereafter submitted to the jury. Defendant claims that the trial judge abused his discretion by failing to recess until 2:00 P.M. It does not seem to us that a request to interrupt a trial for a period of approximately one and a half hours, the request coming at a time when courts normally recess for lunch, is unreasonable. Had any one of us been in a position to exercise the discretion committed to a trial judge when such a request is made, we have no hesitancy in stating that the decision would have been otherwise; but as appellate judges we cannot find that the action of the district judge was so unreasonable or so arbitrary as to amount to a prejudicial abuse of the discretion necessary to repose in trial judges during the conduct of a trial. Judge MacMahon's zeal in bringing to conclusion trials in which he has been

---

1. Though no mention of this fact was made by the judge at the time of his ruling, our study of the record discloses that the doctor had not been listed in any pre-trial list of defense witnesses. A similar failure to give timely notice of the intent to use named defense witnesses was, however, involved in the exercise of the trial court's discretion in case two. See our discussion thereof, *infra*, in this opinion.

the trial judge has prompted disappointed litigants to appeal on the ground that his rulings have been abuses of discretion; but, as we said in Winston v. Prudential Lines, Inc., 415 F.2d 619 (2 Cir. Sept. 3, 1969), "We have permitted a great deal of latitude to be given to individual district judges who conscientiously labor to reduce calendar congestion." For other cases see Davis v. United Fruit Co., 402 F.2d 328, 332 (2 Cir. 1968), cert. denied, 393 U.S. 1085, 89 S.Ct. 689, 21 L.Ed.2d 777 (1969), and also Vitarelle v. Long Island R.R. Co., 415 F.2d 302 (2 Cir. 1969). We have also pointed out that litigants have alternative methods of protecting themselves if there is a possibility that a witness may not be available to testify when needed. First, counsel may take a deposition of such a witness and have it ready to introduce if his appearance at trial is in fact delayed. Second, while of little practical help in this case, application may be made to the Part I Judge under Calendar Rule 7(b) (1) of the Southern District of New York if a witness is not to be available on the day of trial, Winston v. Prudential Lines, Inc., *supra* at 621. While we hold that in the two cases presently before us Judge MacMahon did not overstep the bounds of his discretion, we quite frankly state that the court in case one did come dangerously close to causing "its zeal for a tidy calendar [to] overcome its duty to do justice." Davis v. United Fruit Co., *supra*, 402 F.2d at 331, for it appears obvious that "very little by way of expeditious disposition of cases was gained by the judge's ruling." Vitarelle v. Long Island R.R. Co., *supra*, 415 F.2d at 304. Moreover, we do not think it amiss to indicate that if these recurrent occurrences which to date we have been constrained to view as not being abuses of discretion continue to recur we may find it necessary to consider such a pattern of conduct as detrimental to the administration of justice despite a trial judge's conscientious belief that he is facilitating it.

In case two, defense counsel also was deprived of defense testimony when witnesses present in court but who had not been named in defendant's pre-trial memorandum were not permitted to testify. On the Friday before trial was to commence on Tuesday, defense counsel served on the plaintiff an amended pre-trial memorandum in which he named witnesses not previously mentioned in his original pre-trial memorandum. This memorandum was filed with the court on Monday. Prior to the start of defendant's case, plaintiff's counsel brought this to the court's attention. Judge MacMahon, noting that the action had been pending since 1965, declined to allow defendant's witnesses so named on June 20, 1969 to take the stand on June 24. Accordingly, unable to use the witnesses, the defense rested its case and counsel summed up. After the jury had been charged and had retired, defense counsel was given an opportunity to protect his position in opposition to the court's ruling. In the colloquy that ensued the court recited the protracted history of pre-trial hearings, pointing out that the first pre-trial conference was set for February 21, 1968; that conferences were had on February 26 and 27; that the pre-trial order was entered March 31, 1969; and that more hearings were held on April 24 and 30, 1969. In light of this history, Judge MacMahon was unmoved by counsel's efforts to have the adverse ruling reconsidered.

Rule 16 of the Federal Rules of Civil Procedure states in part that when a pre-trial order is entered it " * * * controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." Paragraph 5 of the pre-trial order controlling the "subsequent course" of case two reads:

The parties agree that the witnesses whom each party now intends to call, along with the specialty of experts to be called, are those listed in the memorandum heretofore filed pursuant to local Calendar Rule 13(b) III (h).

Should any party hereafter decide to call any additional witnesses, *prompt* notice of their identity shall be given to each other party and to the Court by serving and filing a supplemental pre-trial memorandum * * *. [The supplemental pre-trial memorandum] shall set forth the reason why the witness was not theretofore identified. No witness may be called at trial unless identified in a pre-trial memorandum. (Emphasis in original.)

Defendant's amended pre-trial memorandum listed seven witnesses and stated as the reason for their belated identification that "their availability in this case was not previously known." Counsel was unable to expand upon the above reason at trial. Surely a diligent investigation which should have been conducted long before the eve of trial would have disclosed some, if not all, of the witnesses in question. Counsel's vague and incomplete "reason" is patently transparent.

As was observed by Judge Medina in Clark v. Pennsylvania R.R. Co., 328 F.2d 591, 594 (2 Cir.), cert. denied, 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964):

The development of pre-trial procedure and the formulation of Rule 16 of the Federal Rules of Civil Procedure, and similar provisions in most if not all of the States, represents one of the great Twentieth Century contributions to the improvement of judicial administration and the furtherance of effective, timely justice. One of the prime objectives of this new, but now firmly established procedural device, is to do away with the old sporting theory of justice and substitute a more enlightened policy of putting the cards on the table, so to speak, and keeping surprise tactics down to a minimum. With this in mind many courts throughout the country have required some specification by the parties of the identity of the witnesses to be called.

* * * * * *

[I]t is a fundamental principle of pre-trial that this procedure be flexible, with power reserved to the trial judge to amend the order or permit a departure from strict adherence to the pre-trial statements of either party, when the interests of justice make such a course desirable. Otherwise a pre-trial order or pre-trial statements would hold the parties in a vise, and the result might be just about as bad as a return to the old sporting theory of justice.

While the pre-trial order is not a "strait jacket" binding the parties and court to an unwavering course at trial, there is a reasonable basis for Judge MacMahon's decision. Defense counsel listed only one witness, a medical doctor, in his pre-trial memorandum, being content to refer to other potential witnesses in general terms as e. g., "Officers and/or employees of the defendant who will be identified prior to the trial." Defendant's practice, in a case which had been pending for four years, of waiting until four days prior to the trial date to identify his witnesses by name clearly violates both the letter and the spirit of the rule. The defendant's failure to give "prompt" notice, therefore, precludes a finding of abuse of discretion on the part of Judge MacMahon. Adickes v. S. H. Kress and Co., 409 F.2d 121, 124 (2 Cir. 1968), cert. granted, 394 U.S. 1011, 89 S.Ct. 1635, 23 L.Ed.2d 38 (1969).

Finally, appellant claims that it was deprived of an impartial trial in each case because Judge MacMahon at times exhibited impatience and displeasure with defense counsel's handling of the defense. A reading of the records in these cases does tend to evoke sympathy for counsel. His back-to-back courtroom experiences before Judge MacMahon would tend to discourage even a tough-skinned attorney's enthusiasm for trial work. While a good many of the court's unkind remarks indicate a harsh overreaction to counsel's performance, the more vitriolic of Judge MacMahon's dis-

plays of displeasure occurred out of the jury's presence. We are not prepared to hold upon a review of the records in these cases that what occurred before the jury so belittled counsel or so disparaged the defense as to deprive the defendant of fair trials. See Keohane v. New York Central R. R. Co., 418 F.2d 478 (2 Cir. Nov. 10, 1969); United States v. Bernstein, 417 F.2d 641 (2 Cir. Nov. 3, 1969). However, our affirmance should not be construed as approving the trial judge's unnecessary sarcastic comments or his tongue lashing of defense counsel.

The judgments are affirmed.