**John LAGUNA, Plaintiff-Appellant,**

v.

**AMERICAN EXPORT ISBRANDTSEN LINES, INC., Defendant-Appellee.**

**No. 302, Docket 35199.**

United States Court of Appeals, Second Circuit.

Argued Dec. 10, 1970.

Decided Feb. 25, 1971.

Lumbard, Chief Judge, dissented, filed opinion, and voted to affirm.

Thomas E. P. McElligott, New York City (Fields, Rosen, McElligott & Auslander, New York City, on the brief), for plaintiff-appellant.

Robert M. Pellegrino, New York City (Dougherty, Ryan, Mahoney, Pellegrino & Giuffra, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, FEINBERG, Circuit Judge, and CLARIE, District Judge.*

FEINBERG, Circuit Judge:

Plaintiff John Laguna, a seaman, appeals from a judgment for defendant American Export Isbrandtsen Lines, Inc., after a jury trial before Walter R. Mansfield, J., in the United States District Court for the Southern District of New York. Appellant offers a number of reasons why he is entitled to a new trial but only one requires extended discussion: the claim that the trial judge should have modified the pre-trial order to allow plaintiff to press at trial a negligence theory not made explicit in the pre-trial order. Because we agree that the judge erred in this respect, we reverse for a new trial limited to the issues specified below.

This is not a typical seaman's action because there is no controversy over whether or how plaintiff was injured. There is, however, a sharp dispute as to whether any basis exists for holding defendant liable. The accident occurred in defendant's vessel on December 16, 1967, when plaintiff was shoved by the master of the vessel and hit his back against a handrail. The injury turned out to be quite serious, resulting in a spinal fusion operation and other claimed effects, which need not concern us now.

The events leading up to this unusual accident were as follows. Plaintiff was

* Of the District of Connecticut, sitting by designation.

a steward's delegate, or union representative, on the vessel. On the evening of December 15, when the ship was in the Port of Seville, Spain, another crew member, Eugenio Gonzalez, apparently drank heavily while ashore. When he returned to the vessel, he created a noisy disturbance. When told by the chief mate to be quiet, Gonzalez hit him in the face. The chief mate did nothing about this until 8:00 A.M. on the morning of December 16, when he reported the incident to the master. The master then conducted a search for liquor in the room of Gonzalez, who was still obviously drunk. Gonzalez at that time flatly refused three direct orders of the master. Some liquor bottles were found and confiscated; one was half-empty.

Later that morning Gonzalez was still drunk. About noon, Gonzalez insisted that plaintiff obtain for him a master's certificate for medical treatment, which the master had refused Gonzalez a short while before because he was drunk. Plaintiff went to see the master, telling Gonzalez to stay below. Despite this advice, Gonzalez followed plaintiff into the master's room, and the master angrily ordered him out. Gonzalez left, then suddenly returned and punched the master, who was wearing glasses, in the face. Plaintiff managed to get Gonzalez out of the room and, at the direction of the purser, gave first aid to the master, who was bleeding around his eyes. Meanwhile, two ship's officers were subduing Gonzalez in the passageway. The master heard the racket and, with plaintiff dabbing at his eyes, walked to the door. When the master saw Gonzalez still struggling, he violently pushed plaintiff out of the way to go after Gonzalez. As a result, plaintiff was propelled backwards across the passageway and struck his back with great force against a handrail; plaintiff fell down and hit the cement deck. Gonzalez was eventually handcuffed, arrested and taken off the vessel by shore police.

From this occurrence, plaintiff claims to have had a number of theories at trial for holding the ship liable: the master's assault on plaintiff was negligence; the master was sufficiently below the competence of his calling to make the ship unseaworthy; Gonzalez was also not equal in disposition to the ordinary man of his calling, rendering the ship unseaworthy; the ship's officers should have prevented liquor from being brought aboard; and finally, Gonzalez should have been restrained or put ashore after he physically assaulted the chief mate and verbally abused the master, so that the later assault and accident to plaintiff would never have occurred. Although all of the evidence summarized above was admitted, plaintiff was allowed to argue that defendant was negligent or the vessel was unseaworthy only because of the master's assault on plaintiff.[1] As to these two theories, the court held that there was insufficient evidence even to allow the jury to consider whether the master was below the level of his calling. As to whether the master's assault constituted actionable negligence, the jury found for defendant under instructions to be considered below.

The judge's refusal to allow plaintiff to press his other claims was based upon plaintiff's tardiness in presenting them. The complaint was a typical, bare bones pleading, alleging in relevant part[2] only:

Sixteenth: That on or about the 16th day of December, 1967, while plaintiff was employed aboard defendants vessel he was attacked and brutally assaulted by a superior officer causing the injuries complained of herein.

Seventeenth: The aforesaid occurrence was due solely to the unseaworthiness of the said vessel and the negligence of defendant.

---

1. Based upon this ruling, the court excluded evidence that Gonzalez had been convicted in 1960 of assaulting a chief steward.

2. There were also allegations dealing with maintenance and cure, not now in issue.

The pre-trial order, dated December 15, 1969, was similarly imprecise. The relevant paragraphs provided:

 (b) It is plaintiff's contention that on or about the 15th or 16th day of December, 1967, the plaintiff was employed by the defendant aboard the S/S EXFORD and on such date the plaintiff was caused to be pushed by the Master of the vessel and/or employees of the defendant, which assault caused plaintiff to sustain the following injuries * * *.

The said occurrence and the resulting injuries were caused by the unseaworthiness of the vessel and/or the negligence of the defendant, its agents, servants, employees, officers and crewmembers.

* * * * * *

9. The issues to be tried are formulated by the Court (with the consent and agreement of the parties) as follows:

(1) Was the defendant negligent as contended in Paragraph 3(b) herein?

(2) Was the S/S EXFORD unseaworthy as contended in Paragraph 3 (b) herein?

(3) If the defendant was negligent as claimed, or if the vessel was unseaworthy as claimed, did plaintiff sustain any injuries as a proximate result of such negligence or unseaworthiness?

On June 10, 1970, plaintiff served by mail a more detailed Supplemental Pre-Trial Memorandum, which stated:

PLEASE TAKE NOTICE that at the time of trial herein the plaintiff will claim that it was defendant's negligence and that it rendered the vessel unseaworthy: not to have an officer, crew man or guard to prevent grog and liquor from being brought from ashore aboard the vessel; that seaman EUGENIO GONZALEZ should have been restrained in some safe manner after he physically assaulted the chief mate, and verbally abused the master; and that because of his prior record at the U.S. Coast Guard of proven assaults by one EUGENIO GONZALEZ, who was not equal in disposition to the ordinary men in the calling, but was of violent tendencies and propensities, the vessel was unseaworthy and defendant was negligent.

On June 12, 1970, defendant received plaintiff's Supplemental Memorandum and served its objection to it.

The trial began on June 17. After the jury was impanelled but in its absence and before opening statements, defendant objected to the Supplemental Memorandum, apparently because of "surprise." Mr. Pellegrino, counsel for defendant, stated:

Now the original complaint herein alleges a cause of action for assault by the master. The answers to interrogatories allege by the plaintiff that he was assaulted and brutally beaten by the master. The pretrial order contains an allegation that the plaintiff was assaulted by the master. And I suggest to your Honor that there is no cause of action at all for the actions of this seaman Eugenio Gonzalez.

After hearing from Mr. McElligott, counsel for plaintiff, the following colloquy occurred:

The Court: I don't quite see the relevancy of bringing in the history of some party who might have been involved in a fracas. Your charge is that you were assaulted by the captain. I am not going into the background of some other seaman named Gonzalez, because I don't see its relevancy to the charge against the captain of the ship whom you charge with having pushed your client.

Mr. McElligott: Yes; but we also charge that if he had taken this man off the ship or put him in sick bay, either he or the chief mate, when he assaulted the chief mate the night before, this assault on the captain wouldn't have occurred and the captain wouldn't have pushed our man and injured his back so severely.

The Court: I will sustain the motion, if I understand Mr. Pellegrino correctly, to exclude evidence of the history of Gonzalez and his prior record at the Coast Guard as irrelevant to the issue, which is whether or not the captain pushed your client and, if so, whether or not the captain was negligent in pushing your client.

It seems to me that the theory of your negligence, as it is set forth in your complaint, is not [the] one that you are now advancing for the first time by way of a supplemental pretrial memorandum dated June 10th and filed June 11th, 1970, approximately six days before the commencement of the trial of the action. How can you expect a defendant to be prepared to meet this new theory of negligence that you are advancing for the first time? You can't. The whole purpose of pretrial procedure is to get these things on record, resolved, long before trial so that the defendant has an opportunity to prepare.

\* \* \* \* \* \*

Mr. McElligott: Then, sir, do I understand that you are ruling out any proof of any prior history of assaults by this other fellow Eugenio Gonzalez, but I take it you will allow us to tell the facts that happened on the ship.

The Court: Oh, yes. As far as the immediate circumstances of the incident is concerned, that evidence would be relevant, but I would sustain objections to going into Gonzalez' background, his history, his habits of drinking and so forth. It seems to me that the issue is whether or not the captain of the ship acted improperly when he pushed your client.

■ Thus, it is quite clear that the judge excluded from the case, *inter alia*, plaintiff's claim that defendant was liable because of the failure to restrain Gonzalez. The question before us is whether on these facts that ruling was proper. Appellant argues that the district court's ruling violated Fed.R.Civ. P. 15(b), which deals with amendments of the pleadings to conform to the evidence. Appellee claims that the case is governed not by Rule 15(b), but by Rule 16, which covers modifications of a pre-trial order. See generally Note, Federal Pre-Trial Practice: A Study of Modification and Sanctions, 51 Geo.L.J. 309, 312–17 (1963). We agree with appellee's premise but not its ultimate conclusion that affirmance therefore follows.

■ Rule 16 provides, in pertinent part, that the pre-trial order

> controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice.

Whether to allow such a modification in a particular case poses nice questions of balancing "the need for doing justice on the merits between the parties (in spite of the errors and oversights of their attorneys) against the need for maintaining orderly and efficient procedural arrangements." 3 J. Moore, Federal Practice ¶ 16.20, at 1136 (3d ed. 1968). But on the whole, we have not viewed such modification with hostility. E. g., Clark v. Pennsylvania R. R., 328 F.2d 591, 594 (2d Cir.), cert. denied, 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964); Scott v. Spanjer Bros., 298 F.2d 928, 931 (2d Cir. 1962).

■ What were the key considerations here? Plaintiff was very severely injured and the claim that the ship's officers negligently failed to restrain or arrest Gonzalez sooner seems to have been plaintiff's strongest theory, albeit not immediately perceived as such by his attorney. The complaint and the pre-trial order do not explicitly mention this theory, although they contain the generalized familiar statements, which are broad enough to include it. The involved account of what actually took place in December 1967 became clear when the depositions of the chief mate and the master were completed in December 1969 and May 1970, respectively. Plaintiff's theory was made explicit on June 10, 1970. Defendant's response was to object, but no claim of surprise

or request for continuance was made before trial. At trial on June 17, defendant apparently did claim surprise but, at least on the record, neither stated why it could not go to trial nor requested a continuance. The judge ruled admissible most of the evidence upon which plaintiff could base the argument that it was negligent not to restrain Gonzalez after he assaulted the chief mate and abused the master. Certainly this claim required no sudden, new discovery of evidence by defendant. All the facts leading up to plaintiff's injury had been set forth in the depositions taken by defendant. Other than the apparent generalized claim by defendant of "surprise," there is nothing in the record to indicate a justifiable reason for not allowing the pre-trial order to be amended. And the "surprise" existed more in theory than in fact. In short, while we are loath to interfere with the trial court's handling of its calendar, we feel that error was committed here.

Our dissenting brother is concerned that our decision will render "district court calendar and pretrial rules a nullity." Of course, that result would be unfortunate, but any such interpretation of our holding would be unjustified. Our decision is confined to the facts of this case, and the crucial one is that the trial judge admitted the bulk of the evidence upon which plaintiff's new claim could be based. It is true that we have mentioned other considerations above but all of them together, without the evidentiary ruling, would not have required amendment of the pre-trial order.

 Accordingly, we hold that a new trial is necessary on the theory that the ship's officers should have restrained Gonzalez before they did. We see no reason, however, why there should be a new trial on the issues whether the master's assault on plaintiff was negligence or a proper basis for a claim of unseaworthiness. On both of these issues plaintiff has already had a full and fair trial. The evidence of the latter was so skimpy as to justify the court's dismissal. As to the former, the jury could certainly find for defendant, as it did. Plaintiff argues that the judge incorrectly charged the jury that it could find the ship liable in negligence only if the master had been acting in furtherance of its business rather than his own. However, the charge was correct. See Walters v. Moore-McCormack Lines, Inc., 309 F.2d 191, 195 (2d Cir. 1962). This still leaves open the disposition of plaintiff's other two theories: that Gonzalez was so far below the level of his calling as to render the ship unseaworthy, and that the failure of the ship's officers to keep liquor off the vessel was actionable. We believe that the judge's ruling on these issues was a proper exercise of discretion. All the evidence relevant to these claims was not being admitted, in any event, as it was on the failure-to-restrain theory. And at least the claim that Gonzalez's prior history showed him to be unduly vicious might have required further inquiry by defendant. The question remains, however, whether to allow plaintiff to litigate these claims at the new trial, which we hold is required in any event. At the crucial colloquy before the trial started, counsel for plaintiff did not press his theory based on allowing liquor on board, and under all of the circumstances, may fairly be said to have dropped it. The same cannot be said of his claim that the ship was unseaworthy because of Gonzalez's viciousness. Moreover, that issue is in part related to the claim that it was negligence not to restrain Gonzalez earlier. We believe that plaintiff should have an opportunity to litigate at the new trial both theories based on Gonzalez's behavior.

We have considered plaintiff's other arguments and, in view of our disposition of the case, only one requires comment. Plaintiff argues that error resulted when the jury volunteered that it was split six-to-six on a particular issue.[3] While information as to the nu-

3. Whether the captain pushed Laguna "in a fit of rage * * * to * * * attack Gonzalez" or "to get out to the passageway to see if Gonzalez was secured."

merical division of the jury posed a delicate situation for the trial judge, no error was committed here by allowing the jury to continue to deliberate.

Judgment reversed and remanded for a new trial on plaintiff's claims that defendant was negligent because of the failure to restrain Gonzalez and that the ship was unseaworthy because Gonzalez was below the level of his calling.

LUMBARD, Chief Judge (dissenting):

I dissent and vote to affirm the judgment of the District Court.

In these times when delays in the trial of most civil jury cases in the Southern District now exceed two years from the time the case is at issue,[1] I see no reason whatever for holding that the trial judge abused his discretion in refusing to permit plaintiff to amend his complaint on five days' notice before the case was reached for trial on June 17, 1970, a maneuver which undoubtedly would have required an adjournment of the trial had the trial judge permitted it.

On the contrary, the record demonstrates that the trial judge took the only proper and fair course in forbidding an amendment which materially changed the theory upon which the action had been commenced on May 13, 1968, and the theory and proof outlined in the detailed pre-trial order consented to by counsel on December 15, 1969.

Nowhere in the record does there appear any statement by counsel as to why counsel waited over two years until the very eve of the trial to seek an amendment which obviously would require further investigation and the examination and production of witnesses on the part of the defendant. One can only suppose that plaintiff's counsel had not sufficiently ascertained the relevant facts until the eve of trial. But in conducting the business of the court, the trial judge must consider other interests besides attempting to protect plaintiffs from the tardiness and incompetence of their own counsel.[2]

Judge Mansfield succinctly stated the question he had to resolve on Wednesday, June 17, 1970, when the case was reached for trial. After saying that he would sustain the defendant's motion to exclude evidence of any prior history of assaults by Eugenio Gonzalez to support plaintiff's last-minute amendment, he went on to say:

It seems to me that the theory of your negligence, as it is set forth in your complaint, is[3] one that you are now advancing for the first time by way of a supplemental pre-trial memorandum dated June 10th and filed June 11th, 1970, approximately six days before the commencement of the trial of the action. *How can you expect a defendant to be prepared to meet this new theory of negligence that you are advancing for the first time? You can't. The whole purpose of pretrial procedure is to get these things on record, resolved, long before trial so that the defendant has an opportunity to prepare.* (Emphasis added.)

Plaintiff's counsel, Mr. McElligott, then suggested an explanation which in effect confessed the incompetence of plaintiff's counsel as his firm had filed the complaint two years before, when he said:

Mr. McElligott: If your Honor please, Mr. Shapiro handled the deposi-

---

1. The median time interval from the Annual Report of the Administrative Office for 1970 is 27 months (Table C 10), which is exceeded only in two districts in the United States, the Eastern and Western Districts of Pennsylvania.

2. The trial court has the right to expect that at pretrial proceedings counsel will be as thoroughly familiar with the case as they will be at trial. McCarthy v. Ler-

ner Stores Corp., 9 F.R.D. 31 (D.D.C. 1949), Payne v. SS Nabob, 302 F.2d 803 (3rd Cir. 1962) and Note on Variance from Pre-Trial Orders, 60 Yale L.J. 179 (1951).

3. While the minutes and the appendix read "is *not* one that you are now advancing, * * *" this is obviously not what Judge Mansfield meant to say. (Emphasis added.)

tion of this plaintiff by this defendant's attorney. I did not get into this case until recently.

To this Judge Mansfield replied:

The Court: I am not suggesting that you personally are at fault. *All I am saying is that when I am faced with a history including a pretrial order that makes no mention of this theory and it is advanced one week before trial for the first time, I would be rendering calendar and pretrial rules a nullity if I were then to turn around and say, "Oh, yes, you can amend." It is a sufficiently new theory to come as a surprise.* That is the impression I get. (Emphasis added.)

Plaintiff's counsel did not dispute the court's statement that the new theory was a surprise, as claimed by the defendant. Nor did he give any reason for not getting notice to defense counsel until Friday, June 12, a delay resulting from counsel's placing the notice in the mail on June 10.

By what the majority does, this court now renders district court calendar and pretrial rules a nullity. It permits counsel to make last minute amendments on notification to the opposing party five days before trial is set to commence and thus adjourns a trial indefinitely. There is far more at stake than the mere inconvenience to defense counsel. The trial judge must find another case to try on short notice. All the witnesses summoned to attend must be excused. The defendant must now investigate and locate witnesses and arrange to depose them or produce them at trial to be held at some later time. I would leave the plaintiff to seek whatever redress he may be entitled to because of his counsel's failure properly to litigate his claims.

Nothing is more important for the expeditious handling of the trial and the disposition of cases by the district courts than our full support of district court rules and their application by the trial judges except in those rare cases where we are convinced there has been an abuse of discretion. In Napolitano v. Compania Sud Americana De Vapores, 2 Cir., 421 F.2d 382 (1970) we held that the trial court did not abuse its discretion in refusing to modify the pretrial memorandum and allow certain witnesses to testify because the case had been pending for four years and the defendant waited until four days prior to trial before identifying the witnesses by name in his amended pretrial memorandum. In that case Judge Waterman found that the district court's refusal to modify the pretrial order should be upheld because the decision had "a reasonable basis." *Id.* at 386. See also Payne v. SS Nabob, 302 F.2d 803 (3rd Cir. 1962). In my opinion, the district court's refusal to modify the pretrial order in the instant case also had a reasonable basis, and the action of the majority constitutes a most unfortunate retreat from sound principles of administering the business of the trial courts.

As I agree with Judge Feinberg that there is no merit to the plaintiff's other claims of error, I would affirm the judgment of the district court.