**Clover JOHNSON, For Herself and on Behalf of Her Minor Child, Crystal Little, Appellants,**

v.

**DISTRICT OF COLUMBIA, Bradford White Corporation, Robertshaw Controls Company, Appellees.**

**No. 96–CV–1906.**

District of Columbia Court of Appeals.

Argued Dec. 10, 1998.
Decided March 18, 1999.

will have to be reassigned to another judge.

Adrian Rafael Prince, for appellants.

Sheila Kaplan, Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a memorandum in lieu of brief for appellee District of Columbia.

James B. Sarsfield, with whom George T. Masson, Jr., Washington, DC, was on the brief, for appellee Bradford White Corporation.

Sidney G. Leech, with whom E. Charles Dann, Jr. and Kelly Hughes Iverson, Baltimore, MD, were on the brief, for appellee Robertshaw Controls Company.

Before WAGNER, Chief Judge, SCHWELB, Associate Judge, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

Appellant Johnson filed suit against appellees, the District of Columbia, Bradford White Corporation ("Bradford White"), and Robertshaw Controls Company ("Robertshaw"), for damages caused by a scalding injury to her daughter. Her complaint included a variety of claims. She asserted a breach of lease claim against the landlord, the District of Columbia. Johnson pursued claims based on the theories of breach of warranty, strict liability, and negligent failure to warn against Bradford White and Robertshaw. Johnson also asserted a theory of negligent infliction of emotional distress against all appellees.

The strict liability claim was dismissed against all appellees. Johnson abandoned her breach of warranty claim against Bradford White and Robertshaw before trial, stipulating that no design or manufacturing defect existed. Johnson now appeals after a jury rendered a judgment against her on the question of negligence. She raises five issues on appeal: (1) whether the judge abused his discretion in excluding the expert testimony of a master plumber; (2) whether the trial judge committed error in excluding as evidence notices from the Consumer Product Safety Commission; (3) whether the judge abused his discretion in denying a motion to amend the pretrial order, and add new witnesses; (4) whether the judge erred in granting summary judgment on the strict liability claim; and (5) whether the judge committed an error by excluding testimony regarding the emotional distress of Johnson. We affirm.

## I. STATEMENT OF THE CASE

### (A) Facts

On November 17, 1991, Clover Johnson lived in an apartment complex operated by the District of Columbia. Johnson lived with her children, including a three-year-old girl, and a one-year-old boy. The boy had a condition which affected his breathing. To treat his illness, Johnson was instructed by a doctor to have him inhale moist air.

Johnson ran hot water in the bath tub in order to create steam in the bathroom. She then shut the door, and began making her bed. While Johnson was making her bed, the little girl opened the door, entered the bathroom and fell into the bathtub full of hot water. When she began to scream, Johnson ran from the bedroom, grabbed her daughter from the tub, and peeled off her steaming clothing. Some of the child's skin came off with the clothing.

Bradford White manufactured the hot water heater used in the apartment complex. Robertshaw manufactured the hot water control installed on the heater. The heater was located in the basement of the complex, accessible only to authorized maintenance personnel. This was a commercial water heater that supplied hot water to twelve apartments. The heater control was set to 140 degrees Fahrenheit. A maintenance worker testified that he normally maintained the temperature of the hot water in each apartment between 120 and 140 degrees.

### (B) Procedural History

Johnson initially filed suit against the District of Columbia alleging a breach of the lease agreement by failing to provide hot water at a safe temperature. Johnson later amended her complaint to include Bradford White and Robertshaw as parties, alleging breach of warranty, strict liability, and negligence.

In July 1995, a motions judge granted the joint motion of Bradford White and Robertshaw for summary judgment as to strict liability. The motion was denied with respect to the remainder of the claims.

During pretrial proceedings held on October 17, 1995, appellant withdrew her claims of breach of warranty, stipulating that the water heater had no design or manufacturing defects. She also filed a pretrial statement, as part of the proceedings, which included her prospective witnesses, but did not mention appellee's designees or any other persons listed by appellees. At that juncture, Robertshaw, joined by Bradford White and the District of Columbia, filed a motion, *in limine*, to exclude the testimony of appellant's proffered expert witness, a master plumber. On the basis of extended deposi-

tion testimony, the court concluded that the witness lacked sufficient training and experience to qualify as an expert regarding required safety warnings reasonably to be given when using commercial water heaters. Given this turn of events, appellant later sought, unsuccessfully, to amend her witness list to include corporate witnesses.

Initially trial was scheduled to begin in February 1996. However, there were several continuances. Ultimately trial commenced on June 10, 1996. During the course of trial, the judge made certain evidentiary rulings adverse to appellant, causing the exclusion of proffered evidence. At the close of the case-in-chief, the court dismissed the claim premised on the mother's emotional distress. The jury rendered a verdict favorable to appellees on questions of negligence.

## II. DISCUSSION

### (A) Expert Testimony

Appellant earnestly contends that the trial judge's ruling excluding the testimony of her expert witness was error which seriously eroded the strength of her case. We observe, as well, that this question is a primary thrust of this appeal.

 Before a party can present expert witness testimony, "the witness must have sufficient skill, knowledge or experience in that field or calling to make it appear that his opinion or inference will probably aid the trier in his search for the truth . . . ." *Dyas v. United States,* 376 A.2d 827, 832 (D.C.) (quoting MCCORMICK ON EVIDENCE § 13 at 29–31 (E.Cleary, 2d ed.1972)), *cert. denied,* 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977). A decision to exclude expert testimony is reviewed for an abuse of discretion. *Morgan v. Psychiatric Institute of Washington,* 692 A.2d 417, 423 (D.C.1997); *In re Melton,* 597 A.2d 892, 897 (D.C.1991) (en banc); *Coates v. United States,* 558 A.2d 1148, 1152 (D.C. 1989); *Bell v. Jones,* 523 A.2d 982, 988 (D.C. 1986).

 In the varied circumstances which involve the evaluation of an expert's competence, a judge is obliged to consider the qualifications of the witness in relation to the questions presented. *See Johnson v. United States,* 398 A.2d 354, 364–65 (D.C.1979). "While a witness may be qualified to testify as an expert on the basis of his experience in a particular field, a trial judge is not obliged to qualify a proffered expert when there are articulable reasons to doubt his competency." *Glorious Food, Inc. v. Georgetown Prospect Place Assocs.,* 648 A.2d 946, 948 (D.C.1994) (footnotes omitted) (citing *United States v. Crosby,* 149 U.S.App. D.C. 306, 308, 462 F.2d 1201, 1203 (1972)).

In this instance, Johnson offered Mr. Jerome Treadwell as an expert for the purpose of providing the standard of care concerning adequate warnings, and interpreting what action constitutes a violation of the relevant regulations. Appellees moved *in limine* to exclude the expert testimony. The judge's decision to exclude the plumber, as an expert, was based on a deposition submitted by the appellees.

Mr. Treadwell testified that he was a plumber with extensive general experience. Indeed he was duly licensed as a master plumber in the District of Columbia. It was shown that nearly half of his business involved the installation of residential water heaters. The remainder of his work was, however, unrelated to water heaters. Mr. Treadwell had no experience in the design of water heaters and their controls. His testimony showed that he was unfamiliar with, and somewhat misinformed as to regulations governing the permissible temperature ranges of hot water provided from commercial heaters.

Appellant attacks the adverse ruling on two levels. It is urged that the judge erred procedurally as well as with regard to the competence of the witness to testify as an expert.

 Johnson claims it was error to exclude Mr. Treadwell as a witness without conducting a voir dire. While it may be customary for a judge to conduct a voir dire before deciding on the admissibility of expert testimony, *see Coates, supra,* 558 A.2d at 1152, it is not a requirement. Indeed, the court need not hold a factual hearing when an adequate foundation is present in the

record of the proceedings or an attorney's offer of proof. *Johnson, supra,* 398 A.2d at 364. Voir dire is but one method through which a judge may obtain the necessary factual foundation upon which to exercise discretion. So long as the judge has the facts necessary to assess the qualifications of the proffered expert, the judge may properly exercise discretion to admit or exclude expert testimony. We perceive no error in this respect.

█ As to the expertise of the witness regarding adequate warnings associated with commercial water heaters, the record showed that he had little or no experience with such heaters or the regulations governing their use. While the witness could well have offered useful testimony about areas within the scope of his work experience, we can find no abuse of discretion with the trial ruling in this instance.[1]

### (B) Official Records

Johnson also contends that the trial judge erred in excluding notices from the Consumer Product Safety Commission which were published in the Federal Register. The notices invited public comment with respect to a petition whose purpose was to decrease injuries from scalding by reducing the maximum permissible temperatures of water provided by water heaters, and to alter as well the cautionary labeling. Johnson wanted to admit the notices for two reasons: (1) to prove the appellees' knowledge that hot water above 130 degrees Fahrenheit can easily scald small children; and (2) to establish a standard of care that hot water heaters should not be set above 130 degrees Fahrenheit.

█ It is settled that an official public record can be admitted where properly authenticated. Super. Ct. Civ. R. 44(a); *In re D.M .C.,* 503 A.2d 1280, 1284 (D.C.1986). *See also* FED. R. EVID. 803(8). Such evidence is admissible where relevant, and subject to a balancing of the probative value of the evidence against any unfair prejudicial effect on the factfinder. *(William) Johnson v. United States,* 683 A.2d 1087, 1100 (D.C.1996).

█ In this instance the petition to change existing regulations was denied:

> The Commission has decided to deny this petition, in part, because of the voluntary efforts to lower factor pre-set temperatures on water heaters and to provide cautionary labeling addressing the scald hazard.

> In addition, the Commission believes that the maximum setting needed to reduce most scald injuries (125–130 deg.F; as indicated above, the time for a second degree burn to occur at a faucet temperature of 130 deg.F is 12 seconds); *might not provide an adequate hot water supply to some households.*

44 Fed.Reg. 11, 573 (emphasis added). Although appellant would have preferred a regulation akin to the temperature controls espoused in the petition before the CPSC, she cannot persuasively argue that the notices of proposed change established a standard of care. Quite simply, this is because no such regulation was enacted. Indeed the existing District regulations are consistent with federal standards.[2]

█ In order for these notices to have been used to show a violation of a standard of care in a negligence action, the trial judge

---

1. For the first time in her reply brief, Johnson claims that the exclusion of her expert constituted a violation of due process because the motions judge did not follow the Superior Court Rules of Civil Procedure. It must be noted that in a reply brief the appellant is limited to responding to issues presented by opposing parties. *Bingham v. Goldberg, Marchesano, Kohlman, Inc.,* 637 A.2d 81, 95 n. 34 (D.C.1994) (citing D.C.App. R. 28(c)); *Joyner v. Jonathan Woodner Co.,* 479 A.2d 308, 312 n. 5 (D.C.1984). An appellant may not use the reply brief to raise new issues. *In re Huber,* 708 A.2d 259, 260 n. 1 (D.C.1998). Accordingly, Johnson's arguments concerning the violation of the Rules of Civil Procedure will not be entertained by the court.

2. "When hot water is used by the general public or by persons not in control of the heating equipment, an approved water mixing valve shall be installed to limit the temperature of the water at the fixture to not over one hundred forty degrees Fahrenheit (140 ˚ F)." 13B DCMR § 305.21 (1986). In this instance, the tenants were not in control of the water heater, and used the water. Therefore, 13B DCMR § 305.21 appears to apply.

**76**

must determine that the publication actually stated the existing standard of care. *See McNeil Pharm. v. Hawkins*, 686 A.2d 567, 581 (D.C.1996), *cert. denied*, — U.S. —, 118 S.Ct. 63, 139 L.Ed.2d 26 (1997) (citing *Lewis v. Washington Metro. Area Transit Auth.*, 463 A.2d 666, 674 (D.C.1983)); *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir.1994). Clearly the proffered notices failed in this respect.

In balancing the probative value of the notices against the possible prejudicial effect of misuse of such evidence by a jury, we conclude that the trial court did not abuse its discretion in excluding the evidence. Appellees stipulated, for jury consideration, that it was aware that prolonged exposure to tap water above 125 degrees can cause scalding injuries. Further, an answer to an interrogatory, wherein Robertshaw admitted knowing that the young and the elderly were particularly vulnerable to hot tap water scalds, was read into evidence. We perceive no error stemming from this challenge.

### (C) Refusal of Trial Judge to Allow Appellant to Call Corporate Witnesses

Understanding that the CPSC notices could not be offered into evidence, appellant attempted, at trial, to call two employees of the corporate parties as witnesses. One person was a corporate designee of the Robertshaw Company, an individual designated to receive legal process, and to act in other administrative matters. There was also an unsuccessful effort to call a witness employed by the Bradford White Corporation. Objection was sustained on the basis that the witnesses were not listed on the pretrial witness list and were a surprise to appellees, and that the questioning could only produce cumulative evidence. Appellant's counsel responded that although no written order had been issued, he understood that he would be permitted to call the witnesses. The judge did not agree. Thus, appellant asserts that the trial judge abused his discretion in denying the motion to amend her pretrial statement, and in refusing her the right to call the witnesses. This argument has some validity.

The general purpose underlying pretrial procedures is to identify legal issues in the event of a trial, and also to identify witnesses and other evidence likely to be offered as proof. In a departure from practices of earlier decades, courts utilize pretrial conferences following discovery to facilitate settlement or, at a minimum, to structure trial on genuine issues. There is a concerted effort to avoid or minimize what was formerly referred to as "trial by ambush." Yet experience has shown that this process must be flexible. "The pretrial order may be modified at the discretion of the Court for good cause shown and shall be modified if necessary to prevent manifest injustice." Super. Ct. Civ. R. 16(g). "Rule 16 does not contemplate or require that rigid adherence to the pretrial order must always be extracted." *Glorious Food, supra*, 648 A.2d at 949 (citing *Taylor v. Washington Hosp. Ctr.*, 407 A.2d 585, 592 (D.C.1979)). "Whether to allow such a modification in a particular case poses nice questions of balancing 'the need for doing justice on the merits between the parties ... against the need for maintaining orderly and efficient procedural arrangement.'" *Taylor, supra*, 407 A.2d at 592 (citing *Laguna v. American Export Isbrandtsen, Inc.*, 439 F.2d 97, 101 (2d Cir.1971)) (quoting 3 MOORE'S FEDERAL PRACTICE ¶ 16.20 at 1136 (1978 ed.)).

It is apparent, at least in hindsight, that an affirmative response to appellant's pretrial request to call the additional witnesses would have given appellant access to the witnesses, and because of the interval before trial, avoid any serious concern as to surprise. This fact notwithstanding, we observe that appellant's stated purpose in calling the witnesses was to question them concerning the CPSC notices, and to establish that appellees were aware that prolonged exposure to water above a temperature of 125 degrees could cause scalding. Given the earlier ruling by the court, appellant would have been precluded from asking any meaningful questions concerning the CPSC notices. As noted earlier, the parties stipulated that appellees were " aware ... that exposure to unmixed tap water for a sufficient period of time at temperatures above 125 degrees would cause injury." Appellant also

read portions of depositions from corporate witnesses to the jury.

 Viewing this assertion in its totality, and even assuming, without deciding, that denial of appellant's request was error, we conclude that appellant had the benefit of the evidence she sought, though not in the form she preferred. We think any error here was harmless. "[I]f one can say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error ...," *Id.* (quoting *Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)), then the error does not rise to the level of reversible error. *See also District of Columbia v. Banks,* 646 A.2d 972, 982 (D.C.1994); *District of Columbia v. Robinson,* 644 A.2d 1004, 1007 (D.C.1994). We conclude that is the case here.

### (D) Appellant's Theories of Liability

 In the District of Columbia, a plaintiff can file an action for injuries caused by the failure of a manufacturer to give adequate warnings under either a theory of strict liability or negligence. *See McNeil Pharm. v. Hawkins,* 686 A.2d 567, 578 (D.C. 1996); *Payne v. Soft Sheen Prod.,* 486 A.2d 712, 721 (D.C.1985). Under either theory, the plaintiff must show: (1) the appropriate standard of care; (2) a violation of that standard; and (3) that the violation was the proximate cause of the injury. *McNeil, supra,* 686 A.2d at 578. The advantage of the strict liability is, however, that the defendant cannot use contributory negligence as a defense. *Id.* (citing *Payne, supra,* 486 A.2d at 721 n. 9).[3]

 Here, the defense of contributory negligence was not invoked, and the jury did not receive such an instruction. Thus, Johnson received the same benefit as if she had been allowed to proceed on a strict liability theory.

 Under District of Columbia law, a mother cannot recover for the emotional distress caused by witnessing harm that was negligently inflicted on her child alone. *Williams v. Baker,* 572 A.2d 1062, 1063 (D.C. 1990). Rather, the District follows the "zone of danger" approach. *Id.* at 1067. In order to recover, the plaintiff must show that she was physically endangered by the defendant's negligent activity. *Id.* The record shows that Johnson failed to present any evidence that she was herself in danger from the hot water. Therefore, this claim could not lie.

Lastly, the jury concluded that appellant had not proven a negligent failure to warn against any of the corporate appellees; nor any claim against the District.

Accordingly, upon consideration of all of the contentions raised, we find no errors which warrant reversal and we therefore affirm the judgment.

*So ordered.*

---

3. As a prerequisite to recovery under the strict liability theory, "the plaintiff must show that the product entered the stream of commerce with a design or manufacturing defect rendering it unreasonably dangerous." *McNeil, supra,* 686 A.2d at 578 (citing *East Penn Mfg. v. Pineda,* 578 A.2d 1113, 1118 (D.C.1990)). *See also Warner Fruehauf Trailer Co. v. Boston,* 654 A.2d 1272, 1274 (D.C.1995). For a product to be defective, the product must have: "(1) a manufacturing defect; (2) an absence of sufficient warnings or instructions; or (3) an unsafe design." *Warner Fruehauf, supra,* 654 A.2d at 1274 (citing AMERICAN LAW OF PRODUCTS LIABILITY 3d § 17:3 (3d ed.1987)). In this instance, appellant conceded there was no design defect.