UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,
Defendant.

No. 69 Civ. 200 (DNE).

United States District Court,
S. D. New York,
Civil Division.

July 2, 1980.

U.S. Dept. of Justice, Antitrust Division, for U.S.A.

Cravath, Swaine & Moore, New York City, for defendant IBM.

## OPINION

EDELSTEIN, District Judge:

### INTRODUCTION

In February, 1980, IBM counsel in this five year old trial represented to the court that, after 5000 to 6000 documents had been offered by IBM and ruled upon and miscellaneous matters disposed of, all that would remain of IBM's defense was the testimony of four economic experts. Tr. 99091–109. Since that time, the court has been nourished by a steady diet of those 5000-plus documents offered by the defendant, most of which have now been ruled upon. The miscellaneous issues—hearing of remaining "fact" witnesses, consideration of various evidentiary stipulations, assorted motions, and the like—have been disposed of or are now being dealt with by counsel or the court. Having reached this watershed point, the court called a conference on June 2, 1980 to fix the trial schedule for hearing the four remaining defense witnesses. One may readily conceive of the court's surprise when, at this conference, it was apprised that defense counsel had just filed a motion seeking permission to call 124 witnesses not previously identified as part of IBM's direct case. The court is told little more in the motion papers than that the witnesses would:

> testify in an effort to lay a testimonial foundation for certain exhibits to which plaintiff has objected and which the court has recently excluded from evidence.
> . . . .

. . . IBM wishes to call live witnesses to testify about those exhibits in the hope that when presented with live testimony authenticating the exhibits and explaining the circumstance of their creation, plaintiff's counsel might withdraw their objection or, whether those objections are withdrawn or not, the Court might nevertheless reconsider its ruling and receive the exhibits in evidence.

IBM Memorandum, May 30, 1980, at 1-3.[1] This memorandum will speak to that unhappy motion.

### THE LAW OF THE CASE

The motion rests on the following averment of counsel:

For the most part, the exhibits in question are similar to exhibits offered by plaintiff without any testimonial foundation and received in evidence over IBM's objection. When we offered them, we believed that the IBM exhibits in question should have been received into evidence under the law of this case. But since they were not—even for the most limited purposes—we now seek leave to call the authors or other knowledgeable people to testify about them, in order to lay a foundation about which plaintiff cannot complain.

Affidavit of Paul C. Saunders, May 30, 1980 ¶ 2.

▆▆ This statement is based on a misuse of the phrase "law of the case" that has appeared so readily and frequently in the mouths of IBM counsel that one doubts any amount of persuasion could dispel it. Be that as it may, this court does not believe that supposed general evidentiary rules di-

vined from a bulk of rulings during a case can sensibly be called "law of the case" sufficient—without more—to require the receipt of any other piece of evidence. The vice of this proposition is evident from the manner in which IBM has presented it. In recent submissions of documents, IBM has supplied for many documents what can only be described as boilerplate recitations of "the law of the case." For example, to buttress virtually all of its many "state of mind" offers—a slippery area at best—IBM offers the same refrain: "The rule justifying receipt of documents such as _____ for the purpose of showing someone's perceptions was clearly established by the Court in receiving numerous documents offered by plaintiff to show 'state of mind.' The 'state of mind' of virtually everyone became justification for receiving documents offered by plaintiff." The same ten citations to the record are then given in each case. But this fails to consider that each evidentiary ruling is an exercise of judgment—an interplay of many considerations, such as relevancy, cumulativeness, and probative value, to name but a few, that may vary from ruling to ruling. Even when correctly understood, law of the case does not bind the court to perpetuate or apply an inapposite decision when circumstances are different. *See, e. g., Southern Railroad v. Shealey*, 382 F.2d 752, 757 (5th Cir. 1967); *Evans v. Buchanan*, 465 F.Supp. 445, 448 (D.Del. 1979). The fact that the court received and excluded various IBM documents offered with the very same boilerplate bears this out.[2] The court's rulings are right or they are wrong, and doubtless in a case of this size some may be found to be "inconsistent" in some respect. But to require every evi-

---

1. The number of witnesses IBM now seeks to call has been reduced to 119 by events subsequent to the filing of this motion, as described in a letter by IBM counsel to the court, June 6, 1980. The number of documents now listed for reoffer is approximately 130.

IBM also states that "depending on the Court's ruling on exhibits still pending before the court, supplemental applications [to add witnesses] may be made." IBM Memorandum at 3.

2. For example, although IBM contests the court's exclusion of third party documents as business records, the court has received numerous such documents offered by IBM without extrinsic foundation. E. g., DX 12,163 through DX 12,168 (tr. 112,447-53); DX 12,194 through DX 12,197 (tr. 112,470-73); DX 12,246 through DX 12,249 (tr. 112,516-19). When IBM chose to offer documents without foundation testimony, it relied on the four corners of the document to supply foundation. That the court did not always find that reliance supported by the document is the risk IBM took.

dentiary decision to be justified against all that has gone before—when the endeavor requires analogizing one decision to another, comparing one document to the next—would truly make a shambles of the proceeding.[3]

■ The better application of the judicial policy known as law of the case cuts distinctly *against* IBM's position here. The motion to call foundation witnesses is mere preliminary to reoffer an attempted relitigation of documents already ruled on. If the principle of law of the case has any application to evidentiary rulings, it must be that such rulings, once made as to any particular piece of evidence, should be final *as to that piece of evidence* absent compelling reason for reargument: "In the interest of getting a case finally adjudicated . . . a court should normally adhere to its prior rulings." 1B Moore's Federal Practice ¶ 0.404 at 452 (2d ed. 1974).

## THE MOTION TO ADD WITNESSES

Although the court's views on the proper use of the law of the case, and the strong interest in finality, would suffice to deny IBM's eleventh-hour motion, that motion may also be analyzed and shown wanting even when taken at face value, as a straightforward motion to add witnesses not previously identified to the court and the opposition.

Defendant's motion is made pursuant to the court's order of January 12, 1978, that additions to IBM's witness list be made by "formal application on appropriate motion." Responding to plaintiff's claims that IBM had given shifting signals as to the status of its witness list as a tactic to impede plaintiff's preparation, the court demanded

"good faith bases giving full effect to the spirit and intent of this order" as a minimum standard in assessing the timeliness and sufficiency of any application to amend the witness list.

■ Other authorities set up further guideposts by which such an application ought to be evaluated. Federal Rule of Civil Procedure 16 has long been understood to authorize the district court to require the parties to disclose trial witness lists which thereafter govern the course of the trial. *E. g., Jackson v. Kroblin Refrigerated Xpress, Inc.,* 49 F.R.D. 134, 136 (N.D.W.Va. 1970). "Failure to supply these names, unless excusable, may result . . . in refusal to hear the testimony of the undisclosed witness." 3 Moore's Federal Practice ¶ 16.16 at 1127 (2d ed. 1948 & Supp. 1979). A pretrial order requiring or incorporating such a list may be modified "to prevent manifest injustice." Fed.R.Civ.P. 16.[4] Also, Federal Rule of Evidence 403 provides that relevant evidence may nevertheless be excluded "by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Particularly in a protracted case, rule 403 may serve as a predicate for imposition of blanket limits on a party's right to introduce evidence where the indicia of delay and cumulation are, generally, present. *See SCM Corp. v. Xerox Corp.,* 77 F.R.D. 10 (D.Conn.1977) (date certain for conclusion of plaintiff's direct case imposed pursuant to rule 403, without consideration of individual pieces of evidence yet to be offered). At all events, the question whether to permit a party to call new witnesses is reposed in the discretion of the trial court, *e. g., Heilig v. Studebaker Corp.,* 347 F.2d 686, 690 (10th Cir. 1965).

---

**3.** Indeed, it is not clear that allegedly erroneous rulings in favor of plaintiff may be the predicate at all for IBM's offers: "If the opponent *duly objected* and was erroneously overruled in the first instance, he could not claim to present similar inadmissible facts, because his objection would (in theory) save him, on appeal, from any harm which may accrue, and he needs no other protection." 1 Wigmore, Evidence § 15 at 304 (3d ed. 1940) (emphasis in original).

**4.** The witness list of January 31, 1978, which IBM seeks to amend, came about in response to the court's order of January 12, 1978, discussed in text. That order granted plaintiff's motion of October 11, 1977, for a final list of defendant's trial witnesses. The motion relied in part on rule 16, not unreasonably likening the request for a witness list before defendant began its direct case to a pretrial proceeding normally governed by rule 16.

While this court has never expected or demanded slavish adherence to the witness list, *see* Order of January 12, 1978 at 3; *Clark v. Pennsylvania Railroad*, 328 F.2d 591, 594 (2d Cir.), *cert. denied*, 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964), it will judge the application "as part of the total procedural history" of the case, and "with a fair but firm hand to prevent excess expense and delay." *Admiral Theatre Corp. v. Douglas Theatre Co.*, 585 F.2d 877, 897–98 (8th Cir. 1978).

█ For the court's discretion to be persuaded in favor of adding witnesses, the following elements ought normally to be present in some measure: first, some form of surprise or development of the circumstances that render it justifiable that the proponent be allowed to add witnesses or evidence that it could not previously have been expected to identify, *see Agrashell, Inc. v. Hammons Products Co.*, 479 F.2d 269, 287 (8th Cir.), *cert. denied*, 414 U.S. 1022, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973); *Washington Hospital Center v. Cheeks*, 394 F.2d 964 (D.C. Cir. 1968); *see generally Control Data Corp. v. International Business Machines Corp.*, 421 F.2d 323, 327 (8th Cir. 1970); second, as a corollary to the first, some showing that the proffered new evidence or testimony will fill some significant gap in the proof, *e. g., Bornmann v. Great Southwest General Hospital, Inc.*, 453 F.2d 616, 625 (5th Cir. 1971) (trial court properly refused to add new witness where his testimony would be cumulative); *Laird v. Hudson Engineering Corp.*, 449 F.2d 216 (5th Cir. 1971), *cert. denied*, 405 U.S. 955, 92 S.Ct. 1177, 31 L.Ed.2d 232 (1972) (same); *Clark v. Pennsylvania Railroad, supra* (permission to add witnesses properly granted where testimony was central to defense); third, an absence of prejudice to the opponent of the new matter, *see Tupman Thurlow Co., Inc. v. S.S. Cap Castillo*, 490 F.2d 302, 309 (2d Cir. 1974), or an ability to cure such prejudice, *see Clark v. Pennsylvania Railroad*, 328 F.2d at 593–94. Finally, weighing into the balance is the prejudice

of a lengthened trial to the orderly administration of justice, *Laguna v. American Export Isbrandtsen Lines, Inc.*, 439 F.2d 97, 101 (2d Cir. 1971); *see SCM Corp. v. Xerox Corp., supra* (effect of lengthening trial on jurors).

█ Before applying these factors to the case at hand, it should be observed that the motion is not written on a clean slate; rather, it appears in a unique procedural context. Courts may well permit a party, in appropriate circumstances, to reoffer a document after laying further foundation to meet an objection. *See* Federal Rule of Evidence 611(a). Both the government and IBM have in fact done this on countless occasions with respect to individual documents offered with an authenticating witness on the stand. However, most of the documents for which the new witnesses would now lay foundation were offered en masse by oral or written submission and without a witness on the stand. The latter nuance was wholly in control of IBM counsel. Moreover, as to all documents offered in a written format, IBM knew the government's objection before it presented its offer and supporting arguments to the court. The lack of further exposition in IBM's response to the government's foundation objections led the court to believe it had before it all the relevant information the parties could, or wished to, provide. The reoffer of any of these documents would require this court to resurrect (from its files and its memory) and review a large number of exhibits after what was thought to have been a plenary exposition of the merits of each of them. At the outset, this circumstance counsels a strict scrutiny of IBM's request to add witnesses so that these documents may be relitigated.

Read in its best light, the reference of counsel to the "law of this case" quoted at page 414 above is a suggestion of surprise at this court's recent rulings that might excuse the failure of defendant to have made an earlier disclosure of its foundation witnesses.[5] Thus the first of the elements

---

5. IBM has not specifically claimed surprise, or, for that matter, any other recognizable ground

upon which a party might seek the right to call previously unidentified witnesses.

propounded above as influential in persuading a court to permit addition of witnesses may be analyzed in the context of this claim.

■ The motion papers do not elaborate the contention that by "the law of this case" IBM's exhibits should have been received. Moreover, for a significant number of exhibits now at issue, there was no claim *when the exhibits were first offered* that the "law of the case" required receipt. These exhibits are: DX 321, DX 575, DX 1001, DX 1040, DX 1042, DX 1519, DX 3015, DX 3493, DX 3653, DX 7754, DX 7913, DX 8989, DX 9000, DX 9016A, DX 9042, DX 9057, DX 9058, DX 9059, DX 9060, DX 9061, DX 9062, DX 9063, DX 9064, DX 9065, DX 12,161, DX 12,178, DX 12,189,[6] DX 12,244, DX 12,266, DX 12,434 and DX 12,440, all for identification. As to another group, defendant's counsel at oral argument urged admission into evidence on the ground that "many, many hundreds of documents, thousands of documents [were] offered by plaintiff's counsel" allegedly on the same basis as defendant's offer. Counsel cited one plaintiff's exhibit. Tr. 91286. Among those exhibits, the ones IBM now seeks to reoffer are DX 7, DX 207, DX 209, DX 218, DX 231, DX 237, DX 244, DX 246, DX 257, DX 273, DX 275, DX 313, DX 436, DX 440, DX 574, DX 605, DX 614, DX 633, DX 747, DX 835, DX 1066, DX 1084, DX 2009, DX 2095, DX 2140, DX 2178, DX 2234, DX 2236, DX 2237, DX 2335, DX 2452, DX 2453, DX 2454, DX 2455, DX 2457, DX 2458, DX 2474, DX 2499, DX 2501, DX 2538, DX 2922, DX 3133, DX 3178, DX 3201, DX 3211, DX 3229, DX 3231, DX 3334, DX 3335 and DX 3336, all for identification. At least two exhibits now at issue were first offered with only a general reference to the "principles applied in this case" (DX 7305 for identification) or "the law of this case" (DX 9355 for identification).

In reciting these offers made with no—or merely a conclusory—allusion to "the law of this case," the court is not saying that IBM would have been more persuasive had it come to court armed with a flurry of citations whenever it offered a document. Rather, this recitation is made to demonstrate that in the record before the court now—both the current motion papers and the original arguments upon offer of the exhibits—there is in many instances no attempt to show support for IBM's current claim that the "exhibits in question should have been received into evidence under the law of this case." Saunders Affidavit ¶ 3. The absence of such a showing necessarily cuts against the implicit claim that IBM was misled by the court's prior rulings to think its offers were sufficient as made, and that the need to call foundation witnesses did not become apparent until the court's recent rulings.

The balance of the exhibits now at issue *were* offered on the argument, generally attended by the "boilerplate" citations to prior rulings, that "the law of the case" required receipt of the document. Even accepting arguendo that there is an evidentiary "law of the case" that IBM might have drawn on to proceed in this fashion, the court in reviewing these citations was not convinced that (1) the "law of this case" was what IBM said it was, or that (2) the IBM offer was sufficiently similar, and offered in circumstances sufficiently congruent, to prior rulings to justify admission on the basis of any evidentiary rules the court may have laid down.

For example, to justify the receipt of documents produced from third party firms as business records, IBM claimed that PX 1604, PX 4201, PX 4472, PX 4742, and PX 4762 "were offered as business records on the ground that they had been produced from the files of the companies in question" and "received without any additional supporting evidence or foundational testimony." *E. g.*, tr. 112,338. This statement misrepresents the record. When the court reviewed these citations, it discovered that four of the five plaintiff's exhibits were offered with a witness on the stand, who provided sufficient foundation testimony.

---

6. When DX 12189 was offered, defendant cited to "the law of the case" in answer to plaintiff's hearsay objection but not to its relevance objection.

Tr. 43713–17 (PX 4201); tr. 44479–84 (PX 4472); tr. 50951–54 (PX 4742); tr. 53269–74 (PX 4762). Foundation for PX 1604, the one document received without a witness on the stand, was provided by citations of government counsel to deposition testimony in evidence by the author of the document. Tr. 29610–17; *see* PX 3199 (deposition of E. A. Feigenbaum). IBM's citations to the record therefore do not support a rule of admissibility based on the bare fact of production from a company's files, which is the extent of IBM's foundation for many of *its* business record offers, and undercut IBM's contention that it reasonably relied on particular rulings of the court in choosing not to provide foundation at the time of the offer.[7]

On countless occasions the court has admonished IBM that its reliance on prior rulings was misleading and unpersuasive. Indeed, among the documents now listed for reoffer one finds more than one instance in which defendant was told by the court at the time of offer that its reliance on the "law of the case" was misplaced. Tr. 85854 (in reference to DX 8925, 8925A, 8926, and 8927); tr. 91267 (in reference to offers not for the truth).

Moreover, previous submissions by the defendant in this court and the court of appeals, while consistent with the claim that these documents "should have been" received, are inconsistent with any suggestion that the court's recent rulings surprised IBM by imposition of more stringent standards of admissibility. For if as IBM claims the rules of evidence were altered to its prejudice, that fact was known to it when it filed an affidavit of bias and prejudice on July 19, 1979, seeking to recuse this court. *See In re International Business Machines Corp.*, 475 F.Supp. 1372 (S.D.N.Y. 1979) (denying application), *petition for mandamus denied*, [1980–81] Trade Reg. Rep. (C.C.H.) ¶ 63,202 (2d Cir. Feb. 25, 1980), *petition for rehearing and rehearing en banc denied*, No. 79–3070 (2d Cir. April

23, 1980). In that affidavit, IBM complained at length of "changes in the rules of evidence." Affidavit of Nicholas deB. Katzenbach et al. July 17, 1979, at App. vol. 1 § 2. For example, in that affidavit as well as in its argument to this court on recent document offers, IBM cited to third party documents received as business records allegedly without proper foundation. Comparison of the two submissions discloses only that different plaintiff's exhibits were used as examples, and that in the recusal affidavit IBM contended that "a few" non-party documents were received, *id.* at 138, while in the recent submission IBM contends that "numerous" such documents were received. *E. g.*, tr. 112,338.

Over half of the documents for which IBM now seeks to lay foundation were originally offered not for the truth. They were excluded because the relevance of the limited offer was not demonstrated. The court is now told:

> In an attempt to persuade plaintiff not to object, many of the exhibits were offered for limited purposes, to which plaintiff then lodged relevance objections. If the court grants this motion, we will reoffer most of the exhibits for the truth.

Saunders Affidavit at 2 n.*. This is a curious statement. It is not clear that IBM was unable to reinstate an unlimited offer in its submission to the court after learning that its gambit was not accepted. Also, if IBM's purpose was indeed to dismay plaintiff from objecting to a limited offer, it could still have made alternative unlimited and limited offers in the first instance, for the government has been known to object only to the unlimited aspect of some multiple-purpose offers. In any event, IBM's decision to restrict its offer was a tactical maneuver, entirely at odds with its claim of a misplaced reliance on the "law of the case," and it comes with no good grace to ask the court to wade through these documents a

---

**7.** In fact, the court has received third party business records offered by defendant without extrinsic foundation, *see* footnote 2 *supra*,

when the contents and appearance of the document itself gave rise to sufficient indicia of authenticity and reliability.

second time because the maneuver did not pay off.[8]

IBM was also on notice that it could not necessarily expect the court to accede to a request to cure objections *after* a ruling by the court. The issue arose on March 5, 1979, at a robing room conference during which the narrative statement program used in this trial was discussed. Under this program, direct testimony of a witness may be offered as a sworn written statement, with additional "live" direct testimony if desired, and subject to "live" cross examination. The statement is produced to the opponent before submission to court, and the opponent may object to portions of the statement as if the witness were testifying live. The question arose whether the proponent could attempt to cure such objections by having the witness supplement his statement before or after the ruling of the court on objections. The court decided that the proponent may seek to cure by adducing additional direct testimony after being apprised of the objection, *but not after a ruling by the court.* Because of the congruence of that situation with the one before the court today, the court's remarks bear quotation here:

THE COURT: I would like to place this on the record.

Where objections have been made to a narrative statement, and particularly where these objections have been memorialized in question-and-answer form, it would appear to me that the road to take is as follows:

If IBM counsel continuing with its direct examination is concerned about the objections raised, whether they be hearsay, speculation, foundation or whatever, it must at that time make its decision as it would if the direct testimony was being adduced from the stand instead of in connection with the narrative statement whether to attempt to lay a better foundation for the testimony.

If counsel for IBM is satisfied that the questions are appropriate and that the answers are not [sic] and relies upon that, then I just think that ends the matter except for a resolution and ruling by the court.

Now, there is another concern that I think I would have if I were involved in objections to questions as they appear here submitted to the Court, that the Court has a complete right to rely on the questions and answers as they have been defined for ruling by the Court with respect to objections and that the Court will make its ruling based upon the narrative statement which is the direct testimony except for any further oral testimony which may be adduced with respect to the narrative statement in whole or with respect to any question and answer. And certainly at that point I don't think there is any right to address the witness once again to attempt to cure what could have been and should have been cured at an earlier time.

.     .     .     .     .

But I certainly am not agreeable nor do I find it desirable to say that after I have ruled on the questions and answers that once you have known what my decision is that you are then going to retrace your steps and try if possible to cure the objections and ask me once again to rule on the new set of questions and answers.

.     .     .     .     .

MR. HRUSKA [IBM COUNSEL]: And therefore if six months from now or a year from now or whenever a ruling were made upholding the objection, at that stage, under your Honor's ruling, we would not have the right to bring the witness back and have him testify—

THE COURT: Frankly, this absolutely confounds me. I don't understand that. Forget the narrative statement.

---

8.   The court is aware of IBM's allegation in two of the recent document submissions that plaintiff has breached an agreement not to object to certain documents if offered not for the truth. *See* tr. 102,099 100, 102,111–113 (April 18, 1980); tr. 112,601-602 (June 2, 1980). Plaintiff denies the agreement. Even if IBM's version of events is true, it does not change the court's views expressed in text. Only one document listed for reoffer is among those for which IBM claimed the benefit of the alleged agreement. (DX 7305 for identification).

MR. HRUSKA: Of course.

THE COURT: Let's have his direct examination and an objection is made and a response is made and a ruling is made six months later. Certainly, you don't have a right to recall the witness.

MR. HRUSKA: I think I do. That's what I'm holding up on. I think I do.

.    .    .    .    .

THE COURT: Well, I don't believe you have that right but I am not going to leave that in limbo. Then I am going to instruct and insist that wherever an objection is made and you feel that you can cure it . . . then I insist that whatever further testimony you may wish to adduce with respect to any objection be made on all of them. That eliminates the problem.

MR. HRUSKA: Would your honor feel differently about this if we could demonstrate by case law—

THE COURT: No. No.

MR. HRUSKA: —that the—

THE COURT: No. No. You have absolutely no right as I see it.

Tr. 88836–37, 88840, 88845–47.

The foregoing instruction, denying a blanket right to cure objections to the narrative statement after a ruling by the court, gave IBM reason to anticipate this court's view as to a party's right to adduce testimony to cure objections to documentary evidence after a ruling by the court. This fact, as well as the absence of any showing that the court has "changed the rules of evidence," indicates there is no ground of surprise upon which IBM might predicate its motion to call witnesses not previously listed.

The second prong in the analysis looks to the omission in the proof the new witness will fill. For example, in the tort case *Clark v. Pennsylvania Railroad,* supra, Judge Medina approved the trial court's decision to permit two new defense witnesses to testify, even in the absence of special justification by way of surprise, when the witnesses authoritatively contradicted plaintiff's previously unopposed central contention that lighting in the area of the accident was inadequate.

■ IBM's position here is significantly different than that of the proponents of additional witnesses in *Clark* or in any other case on this subject. First, it bears restating that the court has already ruled on the documents at issue, after a full airing of the merits of each offer. Any omission now discovered by IBM is simply the product of these rulings. To permit parties to "start over," reworking their case every time the court delivered interlocutory rulings, would erect an all but impenetrable barrier to finality and the devoutly wished for termination of this and all litigation.[9]

■ Moreover, IBM has not told the court what foundation its proposed witnesses might provide, or why the particular documents it has selected are especially important to its case. Although the court is propelled to some extent into the realm of speculation by the absence of offers of proof, it appears that many of the documents for which IBM would now offer additional foundation were excluded because of defects that could not be cured by any amount of additional testimony.[10]   Whether

---

9. Steps taken to preclude such relitigation are, at the very least, a "concession to the shortness of life." *Reeve v. Dennett,* 145 Mass. 23, 28, 11 N.E. 938, 944 (1887) (Holmes, J.). The aphorism has reappeared from time to time in antitrust cases: *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 230, 60 S.Ct. 811, 847, 84 L.Ed. 1129 (1940); *SCM Corp. v. Xerox Corp.,* 77 F.R.D. 10, 14 (D.Conn.1977); *United States v. Aluminum Co. of America,* 35 F.Supp. 820, 824 (S.D.N.Y.1940).

10. One example may suffice to demonstrate this vice in what IBM proposes to do.   DX 9355 for identification appears to be an internal IBM memo from Perrin F. Smith to Roy J. Smith.   It was offered first as a business record of IBM during the testimony of Dr. Kenneth E. Haughton.   Tr. 95072.   In a lengthy colloquy at this point, the court did not focus on the business record question but suggested that the group of documents IBM was then offering was duplicative of, and in some instances merely prior statements consistent with, Dr. Haughton's testimony.   To quote from this court's written decision on these documents: "Although the

one focuses on the additional foundation the witnesses might provide, or the additional proof the documents themselves might provide, one concludes that in neither case has IBM shown a significant excusable omission that the court in the interests of justice might permit it to cure.

The question of prejudice to the government in allowing these witnesses to testify rests again on the unusual timing of IBM's motion after the court has ruled on the documents. In other cases an adjournment for the purpose of taking depositions and preparing cross-examination may dispel prejudice, or the court may find that the opponent is prepared to meet the new evidence, or no prejudice may be claimed. Here, however, the government rightly objects, for having presumably spent time and effort in litigating these offers, it should not be lightly put to retracing its steps: "Where litigants have once battled for the Court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden*, 327 F.2d 944, 952–53 (2d Cir.), *cert. denied*, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964).

The final element for consideration is the effect of this motion on the administration of justice, and, in particular, on the conclusion of this trial. Although IBM has not made offers of proof that might enlighten the court as to the extent of testimony involved, it may be assumed that some of the witnesses will not testify for lengthy periods of time. Still, 119 is not a small number of witnesses. It is larger by

38 than the total number who have testified for both sides to date, and six of the proposed witnesses have previously appeared in court to testify for the government. Moreover, this motion comes at a time when IBM counsel have postponed for three months, over strenuous objection by the plaintiff, the expected date for submission of the narrative statement of its first economic expert. *See* tr. 99328; 112,721–23; 112,734. It also comes after IBM counsel stated that the documents "must be in the record, or at least offered, prior to the time that the economists testify, so that they can utilize and rely on that evidence for their testimony." Tr. 99094. In response, the court turned its attention almost exclusively to these documents, and ruled on them as expeditiously as possible in order to hasten the appearance of IBM's next witness.[11] It is a portion of these same documents that IBM now seeks to relitigate. This motion, therefore, had been made at a most inopportune time, and for all that appears will not conduce to the efficient completion of this trial.

## CONCLUSION

Predicting the admissibility of any document in a trial is not an exact science. IBM had every opportunity to err on the side of inclusion of foundation, rather than rely on the "law of the case," when the documents were first offered. IBM has had its day in court with each of the exhibits it would now reoffer. This court has concluded that, for all the reasons given above, it should not have another. The court will, there-

---

court made its judgment as to cumulativeness known at the time, at no point did IBM counsel elaborate its argument that the exhibits 'add[ ] something to the record.' Tr. 95045." Memorandum Order, February 7, 1980, at 2. Although IBM would now call the document's author to lay "foundation," he could not testify to the noncumulative nature of the document, a legal conclusion. When the document was re-offered after cross-examination as a prior consistent statement to rebut an alleged charge of recent fabrication or improper influence or motive, it was again excluded when the court determined that there was no such charge, express or implied, in the record. Memorandum

Order, February 7, 1980, at 2 4. Although this may be called a foundation deficiency, it is clearly not of the kind that the document's author could cure. Finally, the document was offered for limited purposes and again excluded for want of a showing of relevancy. Again, this is a defect of a legal nature not answerable by any foundation witness; in any event, whatever argument or facts bearing on relevancy that IBM may seek to introduce now could have been brought to the court's attention the first time around.

11. Between March, 1980 and this date the court has ruled upon approximately 5000 documents.

fore, exercise its discretion against granting permission to call the new foundation witnesses.

Permission to call witnesses to lay foundation for documents on which the court has already ruled is denied. That portion of IBM's motion which seeks permission to call foundation witnesses for documents not yet offered has in effect been granted by the court prior to this date and is now moot. *See* tr. 112762 ff; letters of Thomas D. Barr to the court dated June 4, 6, 1980.