## In re DeLOREAN MOTOR COMPANY LITIGATION.

John Z. DeLOREAN and C. William Garratt, Appellants,

v.

David ALLARD and Price Waterhouse & Company, Appellees.

John Z. DeLOREAN, Appellant,

v.

David ALLARD, Appellee.

MDL No. 559.
Bankruptcy No. 82–06031–G.
Nos. 84–CV–3117–DT, 84–CV–2456–DT and 84–CV–2458–DT.

United States District Court, E.D. Michigan, S.D.

March 4, 1986.

C. William Garratt, Paul F. Doherty, C. William Garratt & Associates, Bloomfield Hills, Mich., for appellants.

Sheldon S. Toll, Robert B. Weiss, John Sklar, Honigman Miller Schwartz & Cohn, Detroit, Mich., for appellees.

MEMORANDUM OPINION (1) AFFIRMING BANKRUPTCY COURT'S "MEMORANDUM AND ORDER DENYING SECURED CLAIM" AND (2) REVERSING IN PART BANKRUPTCY COURT'S "ORDER QUASHING SUBPOENAS AND AWARDING SANCTIONS"

WOODS, District Judge.

John Z. DeLorean appeals from the April 13, 1984 order of United States Bankruptcy Judge Ray Reynolds Graves denying DeLorean's alleged secured claim against the DeLorean Motor Company (DMC). DeLorean's counsel, C. William Garratt, also appeals from that portion of Judge Graves' order of February 16, 1984 which assessed sanctions against Garratt for the issuance by his associate of untimely subpoenas. For the reasons which follow, this Court agrees that John Z. DeLorean does not have a valid secured claim against the DeLorean Motor Company and therefore affirms the decision of the Bankruptcy Court. The Court also concludes, however, that it was an abuse of discretion under the circumstances to assess sanctions under Federal Bankruptcy Rule 9011(a) against an attorney who did not sign a pleading, and thus vacates that portion of the Bankruptcy Judge's February 16, 1984 order which assessed sanctions against C. William Garratt.

I.

As a preliminary matter, the Court notes appellee's concern over the caption which appellants have attached to their brief on appeal. More specifically, appellee takes issue with the inclusion of appeals no. 84-CV-2456-DT and 84-CV-2458-DT:

We have captioned this brief in accordance with that of the Appellant even though we believe the latter to be incorrect and misleading. The portion thereof designated 'Action No. 84-CV-2456-DT' apparently is an appeal (without leave)

from an interlocutory order denying Appellant DeLorean's ... motion for retention of funds procured by the Trustee from a settlement of a cause of action against others. Action No. 84–CV–2458–DT is apparently an appeal (also without leave) from another interlocutory order granting interim fees. Neither order is an issue herein, was not an issue in the hearing and decision below, is not addressed in appellant's brief, and therefore is not addressed herein.

(Brief on Appeal on Behalf of Appellee, David Allard, Trustee of DeLorean Motor Co., at p. 2).

As the parties are aware, appeals no. 84–CV–2456–DT and 84–CV–2458–DT were consolidated with 84–CV–3117–DT by a stipulated order entered on September 27, 1984. Beyond enlarging the time for the filing of briefs on appeal, this consolidation appears to have had little other practical effect, as the issues raised in appellants' brief do not address the orders challenged in these two earlier appeals. To the extent that appellants' brief does not address the issues raised in 84–CV–2456–DT and 84–CV–2458–DT, those appeals are deemed abandoned.

The issues which have been briefed and which are thus clearly before the Court are as follows:

1. Whether John Z. DeLorean was denied due process of law when the Bankruptcy Court refused to adjourn the hearing on his secured claim until a time when DeLorean could be present at the hearing to testify and assist his counsel in the preparation of his case;

2. Whether DeLorean was denied due process of law when he was denied further discovery;

3. Whether DeLorean was denied due process of law when the Bankruptcy Court refused to allow him to call rebuttal witnesses or introduce certain exhibits;

4. Whether the trustee's objection to DeLorean's alleged secured claim failed to plead with particularity the bases upon which the trustee sought to have the claim invalidated or equitably subordinated;

5. Whether the trustee presented sufficient evidence to (1) rebut the validity of DeLorean's proof of claim or (2) prove the claim was subject to equitable subordination;

6. Whether the expert opinion testimony of Yale Levin was admissible in evidence;

7. Whether the Bankruptcy Court erred in failing to ratify or approve the stipulation entered into between DeLorean and DMC as to the amount of DMC's purported indebtedness to DeLorean; and

8. Whether the Bankruptcy Court erred in imposing sanctions against attorney C. William Garratt pursuant to Bankruptcy Rule 9011(a).

While some of the above issues may be dispatched in short order, the Court's discussion of them in Parts III and IV of this Opinion is facilitated by the following review of the facts.

II.

The DeLorean Motor Company (DMC) filed its Chapter 11 petition on October 25, 1982 and converted these proceedings to a Chapter 7 bankruptcy liquidation on December 21, 1983. While the case was still in Chapter 11, DeLorean filed a Proof of Claim in the amount of $940,845.91 for "[f]unds loaned to DeLorean Motor Company and not repaid." (Proof of Claim No. 360). This amount was later reduced to $678,445.91 by a stipulation entered into between DeLorean and DMC which waived two years' rental payments on a certain facility in Bridgewater, New Jersey, leased by DeLorean to DMC. This stipulation, filed on January 25, 1983, also provided that the Bankruptcy Court could enter an order "determining the nature, extent and validity" of DeLorean's secured claim against DMC.

DMC's alleged liability on this claim arose as the result of a Loan Agreement

and Security Agreement which it entered into with DeLorean in February, 1982. According to appellants, this loan was intended to bolster the failing DMC by having DeLorean draw on his personal line of credit with Citibank in New York to advance funds to the company. The Loan Agreement provided in part:

1. [DeLorean] shall loan to DMC during the term of this agreement sums of money not to exceed the aggregate amount of five million ($5,000,000.00) dollars on the conditions set out below.

2. DMC may borrow such sums subject to the conditions set out below.

3. [DeLorean] shall loan such sums from time to time at his sole discretion on the condition that [DeLorean] believes based on his sole judgment that:

a) The proceeds of such borrowings are for the necessary needs of DMC and

b) [DeLorean] has sufficient secured collateral for the borrowings at all times and

c) The loans to DMC do not effect his ([DeLorean's]) general credit rating or reputation.

4. DMC will repay the borrowings immediately (and from time to time) as funds become available to it without demand.

5. It is anticipated that such borrowings will be on a daily basis when needed and be evidenced by Demand Promissory Notes for the amount borrowed and shall bear interest at the rate of 2% over Citicorp, New York, New York, prime per annum. The principal and interest shall be paid on each note as provided above or on demand of [DeLorean] in reverse order. This loan agreement and the promissory notes to be executed shall be secured by a Security Agreement and the filing of Uniform Commercial Code Statements in states, counties and locations designated by [DeLorean].

6. DMC may prepay any note.

\* \* \* \* \* \*

8. If any of the [events of default] listed in [¶ 7] occur, the unpaid balance of each note together with the accumulated and unpaid interest shall immediately become due and payable.

9. This agreement shall be binding on the representative successors and assignees of DMC.

10. DMC shall reimburse [DeLorean], on demand, for all out-of-pocket expenses incurred or reasonably to be incurred by [DeLorean] in connection with the borrowings.

\* \* \* \* \* \*

(Loan Agreement).

The Security Agreement granted DeLorean a security interest in such property of DMC as:

1. All rights to the payment of money now owned or hereinafter acquired, whether due or to become due and whether or not earned by performance including, but not limited to, accounts, contract rights, chattel paper, instruments and general intangibles, all of which are hereinafter called 'Receivables'.

2. All inventory now owned or hereinafter acquired.

3. All proceeds of Receivables and inventory.

4. All rights to insurance and the proceeds thereof covering any of the above property.

5. All personal property, including furniture, furnishings, art work and equipment wherever located and whether now or hereafter acquired by it and all of debtor's existing and after acquired fixtures affixed to premises located at ... Irvine, [California]; ... New York, [New York]; ... Troy, [Michigan]; ... Bridgewater, [New Jersey] ... and ... Atlanta, [Georgia]....

(Security Agreement, Schedule "A"). DeLorean's security interest was perfected by the filing of financing statements in California, New York, Michigan, New Jersey and Georgia.

On March 11, 1983, written objections to DeLorean's alleged secured claim were filed by the unsecured creditors committee. The committee filed amended objections on December 13, 1983. Shortly thereafter, on December 21, 1983, DMC elected to convert the proceedings from Chapter 11 to Chapter 7. On January 4, 1984, appellee David Allard, acting on his appointment as Interim Trustee, filed objections to DeLorean's secured claim, raising the following "grounds for rejection or, at the very least, substantial reduction pending a final determination ... of the claims ...":

1. The binding effect of DeLorean's stipulation providing a $260,000.00 credit, "thus reducing the amount of the claim to no more than $680,000.00, as a matter of law.";

2. The documentation submitted with the stipulation, which makes it "clear that the purported Security Agreement does not cover at least $226,464.00 of the unwaived claim. Therefore, Mr. DeLorean's secured claim, as a matter of law, cannot exceed $453,536.00.";

3. DeLorean's inability to meet his burden in substantiating both the validity and amount of the claim;

4. The unenforceability of the claim as a fraudulent obligation under § 548 of the Bankruptcy Code "because the obligation was incurred with actual intent to hinder and delay the creditors of DMC"; and

5. The requirement of equitable subordination as the result of DeLorean's "fraudulent and inequitable conduct toward the estate and its creditors, ..."

(The Interim Trustee of DeLorean Motor Company's Brief in Opposition to Payment of John DeLorean's Alleged Secured Claim, pp. 4–5).

DeLorean's claim was set for hearing on January 24, 1984, but was adjourned to February 3, 1984. On that date, C. William Garratt entered an appearance as counsel for DeLorean in connection with the secured claim, but no substitution for DeLorean's former counsel was entered until February 7. Trial on the secured claim

was conducted on various dates between February and April of 1984, and on April 17, 1984, Judge Graves issued his Memorandum and Order Denying Secured Claim. That decision, from which appellants now appeal, is reprinted at 39 B.R. 157 (E.D. Mich.1984).

### III.

As noted in Part I of this Opinion, above, many of the issues raised herein by appellants may be disposed of quickly. This is especially true of the various procedural objections raised by DeLorean.

 DeLorean claims he was denied due process of law when Judge Graves refused to adjourn the hearing until a time when DeLorean could be present to testify and assist his counsel in the preparation of his case. As appellee points out, however, DeLorean was not even listed on his counsel's witness list, unless he was intended to fit within the general category of "rebuttal witnesses." Even if this were the case, however, it would have been within Judge Graves' discretion to have barred DeLorean's testimony because of his counsel's failure to supply specific identification of witnesses as requested. See, e.g., *Napolitano v. Compania Sud Americana de Vapores*, 421 F.2d 382, 385–386 (2d Cir.1970).

This was not a case where the testimony at trial revealed the need for rebuttal from an obscure functionary of DMC which could not have been reasonably anticipated prior to trial. Given the expansive role of DeLorean in DMC and the nature of the claim before Judge Graves, it would not work any injustice to expect that DeLorean would have been identified by name as a desired witness at a point earlier than this appeal. These considerations, together with a recognition of the fact that Judge Graves *did* adjourn the hearing at times to accommodate DeLorean's counsel, leave this Court with the firm conviction that no error was committed nor any discretion abused by Judge Graves' failure to adjourn the hearing until DeLorean could appear and testify.

Appellants next contend that John DeLorean "was forced to play a game of blind man's bluff with the Trustee, his counsel, and the bankruptcy court holding all the cards" as a result of Judge Graves' refusal to permit further discovery:

In an attempt to ferret out the facts upon which the Trustee based its broad, nebulous, and conclusory allegations [opposing DeLorean's secured claim], [DeLorean] served his combined Rule 33 Interrogatories, Rule 34 Request for Production of Documents, and Rule 36 Request for Admissions of Fact upon the Trustee on April 18, 1983, a year and a half before the hearing. [DeLorean] sought, *inter alia,* all facts upon which each allegation (fraud, etc.) was based and the names of all witnesses intended to be called to support the contention that [DeLorean's] secured claim should be invalidated or subordinated.

On or about May 13, 1983, [DeLorean] was served with a 'response' stating that the examiner appointed by the Court to conduct the investigation had only recently commenced his review and that it could not respond in a 'meaningful' way until the conclusion of the examiner's investigation. Despite knowing that the examiner had *terminated* his investigation relative to the secured claim in April of 1983, the preceding month, the response failed to indicate such and was never corrected or amended so as not to mislead [DeLorean]. Moreover, the Trustee failed to identify any witnesses, expert or otherwise, he intended to call at the hearing. Thus, [DeLorean] had to prepare for the hearing on the secured claim 'blind.'

It was only during the first hearing, on the secured claim, January 24, 1984, that [DeLorean] learned that the 'independent' examiner would act as the Trustee's sole witness. Despite learning at such a late hour of Mr. Levin's proposed role in the secured claim hearing (which was to commence with testimony on February 3, 1984), [DeLorean] noticed Mr. Levin's deposition *duces tecum* for February 1, 1984. . . .

Instead of submitting to deposition, on February 1, 1984 Mr. Levin filed a Motion for Protective Order. The next day, February 2, 1984, the bankruptcy court entered an Order Quashing the Subpoena for the reason that there was inadequate notice. During the February 2, 1984 hearing, [DeLorean's] counsel orally requested the court to compel the deposition to proceed, but the court refused to intercede when Mr. Levin's counsel voiced his own schedule conflict. It must be noted, though, that the court *never* indicated that Mr. Levin's deposition could not be taken.

Undaunted and desperate to ascertain how the Trustee was going to attempt to 'rebut' [DeLorean's] secured claim, one of [DeLorean's] counsel, Bruce L. Sendek, signed and had served on February 8, 1984 another notice of taking Mr. Levin's deposition, scheduling it for February 13, 1984.

Again, instead of submitting Mr. Levin to deposition, on February 10, 1984, Mr. Levin's counsel filed yet another Motion for Protective Order. Less than a week later, on February 16, 1984, the bankruptcy court entered an Order Quashing Subpoena and Awarding Sanctions. . . .

(Brief on Appeal on Behalf of Appellants John Z. DeLorean and C. William Garratt, pp. 14–15) (emphasis in original) (footnotes omitted).

While the Court has some difficulty with the sanctions awarded on February 16, 1984, as detailed in Part IV of this Opinion, below, it has no quarrel with the remainder of Judge Graves' rulings on this discovery issue. Contrary to appellants' above characterization, Judge Graves' stance was not an attempt to force DeLorean to defend his secured claim "blind," but rather was a reflection of the fact that DeLorean's new counsel was too late in seeking voluminous information which could have been pursued much earlier. While appellants contend they were misled by May, 1983 answers to interrogatories suggesting that the examiner could not yet respond in any "meaningful" way pending the completion of his

investigation, the record shows, see, e.g., Transcript of February 24, 1984 at pp. 18–19, that examiner Levin *did* repeatedly advise DeLorean's attorneys of the transactions under review and the supporting documents required. Considering that DeLorean's secured claim hinged upon his own ability to support it, and considering that his counsel had ample opportunity to cross-examine Levin, DeLorean can hardly claim any outcome-determinative prejudice resulted from Judge Graves' refusal to permit an untimely and oppressive deposition.

In reaching this conclusion, the Court is further swayed by a recognition of the fact that DeLorean's claimed "blindness" was self-imposed. The Court is satisfied from a review of the record that Yale Levin's inability to complete his examination was due in large part to the incompleteness of the records provided him and DeLorean's lack of cooperation.

Appellants also take issue with Judge Graves' refusal to allow DeLorean to call rebuttal witnesses or introduce certain exhibits. Reading Judge Graves' instructions from the bench on January 24, 1984 in a light most favorable to appellants' position does not satisfy this Court that appellants were justifiably surprised when told they could not simply designate a general category of "rebuttal witnesses." Adding to this conclusion is the apparent acquiescence of DeLorean's counsel in the Trustee's counsel's following characterization of Judge Graves' order from the bench:

> As we advised you during our telephone conversation on the afternoon of January 25, 1984, it is our understanding of Judge Graves' oral order in this matter that only those witnesses listed by the respective counsel will be able to testify in these proceedings and only those exhibits identified by the parties in the listing of witnesses and exhibits will be considered by the Court. We believe that all parties should proceed with the understanding that the Court will strictly enforce the above referenced order.

(Brief on Appeal on Behalf of Appellee, David Allard, Trustee of DeLorean Motor

Co., at pp. 14–15). As appellee points out, there was no denial at that time by any of DeLorean's counsel that the above understanding accurately reflected Judge Graves' position. While the probative effect of this acquiescence is admittedly slight, it does tend to show that this claimed "surprise" was of appellants' own making.

The Court has considered the four elements endorsed in *United States v. International Business Machines Corp.*, 87 F.R.D. 411, 416 (S.D.N.Y.1980), as a means of determining whether to permit the addition of witnesses, but concludes that such an exercise only reinforces the correctness of Judge Graves' decision. Contrary to appellants' position, the first element, "some form of surprise or development of the circumstances that render it justifiable that the proponent be allowed to add witnesses or evidence that it could not previously have been expected to identify," *id.*, does not require reversal here. As appellee points out, DeLorean's Proof of Claim carried only a *prima facie* presumption of validity, and DeLorean and his counsel knew that he bore the ultimate burden of proof under the circumstances. He and his counsel, then, could hardly have been surprised that Levin's testimony would require that DeLorean be prepared to substantiate his claim.

The second element, "some showing that the proferred new evidence or testimony will fill some significant gap in the proof," *id.*, does not militate in favor of permitting the testimony of the rebuttal witnesses or the introduction of the exhibits. At most, the rebuttal witnesses would have served to impeach Levin on collateral issues rather than on the validity of the secured claim. And the promissory notes which DeLorean sought to introduce would not have filled some "significant gap in the proof," since, as appellee notes, "they merely purported to be miscellaneous notes, from time to time executed during [DeLorean's] commingling and disbursement of DMC funds, which neither singly nor collectively were alleged to correspond either to the sum

asserted in his initial Stipulation claim or in his later Proof of Claim." (Appellee's Brief on Appeal at p. 48).

While the third element, "an absence of prejudice to the opponent of the new matter," adds little to the current analysis, the final factor, a weighing of the prejudice of a lengthened trial to the orderly administration of justice, provides further support for Judge Graves' ruling. Appellants contend on one hand that the hearing would have been "lengthened slightly" by the addition of the proposed witnesses, but on the other hand identified nineteen witnesses whom they would have called. Weighing the limited value of such testimony to the central issue of the validity of DeLorean's secured claim (as opposed to collateral issues) against the resulting prejudice of a lengthened proceeding that is but a small part of this overall litigation leaves this Court satisfied that there was no abuse of discretion as to this issue.

■ Several other issues need detain this Court only briefly before passing on to the merits of DeLorean's secured claim. The Court has considered and now rejects appellants' contention that the interim trustee's objections failed to plead with the requisite particularity the grounds upon which he sought to have DeLorean's claim invalidated or subordinated. A review of the interim trustee's Brief in Opposition to Payment of John DeLorean's Alleged Secured Claim reveals to this Court's satisfaction that the objections challenged here were more than "merely formal" and contained "some substantial factual basis to support [their] allegations[s] of impropriety." *In Re Mobile Steel Company*, 563 F.2d 692, 701 (5th Cir.1977). This conclusion was also apparently shared by DeLorean's counsel on January 24, 1984 when he agreed to a February 3, 1984 trial date without raising any concerns over the need for greater specificity in the objections. ■ Nor is the Court persuaded that Yale Levin's expert opinion testimony was inadmissible. A review of the record reveals that Judge Graves had ample reason to qualify Levin as an expert following the parties' examination into Levin's qualifications. Contrary to appellants' assertions, the record also reveals that Levin's opinions were based on more than just the four "suspicious transactions" related to Beaudray and Oliver, Consolidated International, Vinci and Bridgewater. Further, it makes little sense for DeLorean to complain that Levin had not produced all the written data he relied upon in formulating his opinions when, as appellee points out, the records in question remained in DeLorean's possession and when, in any event, the facts and transactions which formed the basis of Levin's opinions were undisputed.

Perhaps the claimed error easiest to dismiss is appellants' contention that the Bankruptcy Court erred when it failed to ratify or approve the Stipulation between DeLorean and DMC. The obvious differences between this case and *In Re Philadelphia Athletic Club, Inc.*, 17 B.R. 345 (E.D.Pa.1982), aside, it is puzzling how appellants can complain that Judge Graves undertook to determine the validity of De-Lorean's claim when the Stipulation called for just such a proceeding. To accept appellants' position on this issue would require viewing the Proof of Claim as an irrebuttable presumption of validity, rather than the mere *prima facie* proof it actually is.

■ The limited probative effect of De-Lorean's Proof of Claim also provides an appropriate starting point for an examination into appellants' challenge to the merits of Judge Graves' decision. As appellee correctly points out, such a proof of claim, standing alone, cannot carry the day when an objector has come forward with facts in opposition to the claim which "by probative force [are] equal to that of the allegations of the proofs of claim themselves." 3 Collier on Bankruptcy (15th ed.) p. 502–22. In such a case, the *prima facie* presumption of validity is defeated and it continues to be the claimant's burden to establish the validity and amount of the claim:

[T]he ultimate burden of persuasion is always on the claimant. Thus, it may be said that the proof of claim is some evidence as to its validity and amount. It is strong enough to carry over a mere formal objection without more. The objector is obliged to go forward and adduce sufficient evidence to rebut the claimant's *prima facie* case. Once this is achieved, however, it remains for the claimant to prove the claim as to its validity and as to its amount and not for the objector to disprove it. In short, once the *prima facie* effect given the claim is overcome, the burden of ultimate persuasion rests on the claimant to prove that his claim is appropriate for purposes of sharing in the distribution of the debtor's assets. That proof must be by a preponderance of the evidence and it is for the bankruptcy judge to determine whether or not that has been achieved, with due regard being given to the probative value of the proof of claim itself.

*Id.*

■ Added to the above formulation is the principle that DeLorean's dealings with DMC must be subjected to "rigorous scrutiny" as a result of his fiduciary relationship with that company. *Pepper v. Litton,* 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939). Such a relationship requires the challenged fiduciary "not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." *Id.* See also *In Re Multiponics, Inc.,* 622 F.2d 709, 714 (5th Cir. 1980); *In Re Mobile Steel Company,* 563 F.2d 692, 700–702 (5th Cir.1977).

Appellants do not challenge the above principles, but instead complain that the Bankruptcy Court ended its analysis with the conclusion that DeLorean had commingled DMC funds with his personal funds. They assert, correctly, that the mere fact of commingling is insufficient to invalidate or subordinate a claim. See, e.g., *In Re Mobile Steel Company, supra,* at pp. 699–700 (equitable subordination should not be ordered unless such subordination would not be inconsistent with the provisions of the Bankruptcy Act and unless it can be shown there was inequitable conduct on the part of the claimant which conferred an unfair advantage on him or resulted in injury to creditors.) This Court's reading of the decision below, however, reveals that the Bankruptcy Judge based his conclusions on more than the mere finding that DeLorean had commingled funds. Further, a review of the record and testimony before the Bankruptcy Court discloses several additional grounds in support of the decision under review.

It is apparent to this Court that the Bankruptcy Court recognized the presumptive validity of DeLorean's Proof of Claim, but found it rebutted by evidence produced by the trustee. 39 B.R. at 159. Contrary to appellants' assertions here, this evidence was not limited to the uncontroverted proof of commingling, but included, for example, evidence that DeLorean had failed to maintain adequate books and records and had made payments to himself "or to his controlled entities" of approximately $900,-000.00. *Id.* Thus, if this were a case where the Bankruptcy Court had accepted the validity of the claim, the necessary elements for equitable subordination, see *In Re Mobile Steel Company, supra,* at pp. 669–700, would have been present here. However, the Bankruptcy Judge did not reach the question of equitable subordination because he concluded DeLorean had failed to meet his burden of proving he has a valid secured claim.

Reading only the last paragraph of the Bankruptcy Court's decision might leave the impression that that Court had collapsed its analysis and concluded that the commingling of funds and failure to maintain records alone invalidated DeLorean's claim. That paragraph reads:

It is clear on this record that [DeLorean's] transactions constitute badges of fraud which invalidate [DeLorean's] alleged secured claim. It is equally clear that the failure to maintain separate accounts for business and personal transactions invalidates [DeLorean's] claim.

For the foregoing reasons, this Court finds that [DeLorean] does not have a valid secured claim.

39 B.R. at 160–161.

It is clear from all that precedes that paragraph, however, that this summary omitted the intermediate steps in the Bankruptcy Court's analysis. Having used the various "badges of fraud" identified by the trustee to conclude that the presumption of validity of the Proof of Claim no longer existed, the Bankruptcy Court recognized that DeLorean was effectively left where he began, with the ultimate burden of persuasion. The testimony offered in an attempt to meet that burden was unconvincing, leading the Court to conclude: "The testimony of the witnesses introduced by the claimant does not persuade the Court that [DeLorean] has a secured claim against DMC." *Id.* at 160. This Court's review of the record produces the same conclusion, as the testimony of Judith Lynch and Mary Thoman raises numerous questions as to the validity and amount of any claim DeLorean might have against DMC. It is inconceivable how anyone could review the testimony of these two individuals who were closely involved with the books of DeLorean and DMC and state with confidence the amount of DeLorean's claim, let alone assert its validity. See, e.g., Transcript of March 27, 1984, at pp. 14–15; Transcript of March 20, 1984, at pp. 95, 169, 203–204; Transcript of March 13, 1984, at pp. 41, 45, 51–53, 72.

Finally, the Court finds it instructive in passing on this appeal to note that the apparent purpose of the security agreement between DeLorean and DMC was to hinder the company's creditors, as evidenced by the Security Agreement Addendum of March 8, 1982, which provided in part:

> Because of the recent actions of Bank of America and the possibility that other creditors may tie up the bank accounts of DeLorean Motor Company (DMC) and the need for immediate funds under the Sol Shenk arrangement to release cars to the dealers expeditiously, it is probable and likely that you [DeLorean], to help the company in its restructure, will have to pay DMC obligations directly.

As appellee points out, under § 548 of the Bankruptcy Code, 11 U.S.C. § 548, a trustee may avoid any transfer of interest of the debtor in property or any obligation incurred by the debtor if the transfer was made or obligation incurred with the "actual intent to hinder, delay, or defraud any entity" to which the debtor was indebted. 11 U.S.C. § 548(a)(1). This consideration provides additional justification for the result reached by the Bankruptcy Court.

## IV.

■ While the Court is satisfied with the correctness of the Bankruptcy Court's decisions on the substantive and procedural issues raised in this appeal, it is troubled by the award of sanctions under Bankruptcy Rule 9011(a) against an attorney who did not sign the offending pleading.

Sanctions were assessed against C. William Garratt on February 16, 1984 after the Bankruptcy Judge quashed a subpoena which had been signed by Garratt's associate, Bruce L. Sendek. Appellant Garratt contends this was "obvious error":

> The Order imposing sanctions against C. William Garratt personally recited that it was based on Federal Bankruptcy Rules, Rules 9011(a). That rule provides:
>> Every petition, pleading, motion and other paper served or filed in a case under the code on behalf of a party represented by an attorney ... shall be signed by at least one attorney of record in his individual name, ... The signature of an attorney or a party constitutes a certificate by him that *he* has read the document; that to the best of *his* knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, cause delay, or increase the cost of

litigation.... If a document is signed in violation of this Rule, the Court on motion or on its own initiative, *shall impose on the person who signed it,* the represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of the document, including a reasonable attorneys' fee.

(emphasis added).

As previously noted, the Notice of Taking Deposition issued upon Mr. Levin was signed by attorney Bruce L. Sendek. While it might be reasonable to infer that Mr. Sendek was acting on behalf of his employer, C. William Garratt & Associates, P.C., there is absolutely no evidence to suggest that Mr. Sendek was acting on behalf of Mr. Garratt. Mr. Garratt's signature does not appear on the Notice of Taking Deposition; therefore, the imposition of sanctions pursuant to bankruptcy Rule 9011(a) was obvious error. The foregoing represents C. William Garratt's Brief on Appeal.

(Brief on Appeal on Behalf of Appellants John Z. DeLorean and C. William Garratt, at pp. 15–16, n. 2).

■ This Court does not dispute that Rule 9011 applies to a Notice of Taking Deposition. Rule 9011 is an adaptation of F.R.Civ.P. 11, *In Re Whitten,* 11 B.R. 333, 334 (D.D.C.1981), and Rule 11 applies to any paper a lawyer signs, *Duncan v. WJLA–TV, Inc.,* 106 F.R.D. 4, 5 (D.D.C. 1984). However, this Court still concludes that the only circumstances under which Rule 11 sanctions should be assessed against someone who did not sign a pleading are those in which the Court decides sanctions should be assessed against a client.

Although the 1983 amendments to Rule 11 were intended to provide a more effective deterrent to abuses in the signing of pleadings so that "a greater range of circumstances will trigger its violation," Advisory Committee Note to 1983 amendments, reprinted at 97 F.R.D. 165, 198

(1983), the Court is persuaded for several reasons that the instant circumstances were not intended to fall within that range. For one thing, the decision of the Bankruptcy Court completely absolves attorney Sendek of any wrongdoing, even though he as the signer had a "stop-and-think" obligation to perform a reasonable inquiry before noticing Levin's deposition. *Duncan, supra,* at p. 5. While a court may look to whether a signer depended on another member of the bar in determining what constitutes a reasonable inquiry, 97 F.R.D. at 199, the record before this Court does not present Sendek as a neophyte who had just entered the case and who had to take his boss' word that deposing Levin under those specific time constraints would be proper. The amended Rule 11 requires "some prefiling inquiry" which imposes a standard "more stringent than the original good-faith formula," *id.,* so it is not enough to excuse Sendek on the ground that he was just following orders.

The Court is also persuaded that limiting the sanctions of Rule 11 to either the signer or his or her client would avoid the problem of "satellite litigation over the imposition of sanctions," 97 F.R.D. at 201. By confining such sanctions to the signer or client, a court is spared the task of dissecting the lines of command of a given law firm (with a possible intrusion into work product) and determining just where the accountability lies. Under the scheme of Rule 11, such accountability already lies with the signer, even if it means informing a superior that the proposed pleading is either factually unsound or not substantiated by the existing state of the law.

These theoretical considerations aside, the Court is not persuaded from a review of the record that the Bankruptcy Judge made sufficient findings as to the accountability of attorney Garratt in this matter. Nor is the Court convinced that Rule 9011 was violated by noticing these depositions when, as appellants point out, the Bankruptcy Court never indicated that Levin's deposition could never be taken.

For these reasons, the assessment of sanctions against C. William Garratt will be set aside.

## V.

John Z. DeLorean presented a Proof of Claim against the DeLorean Motor Company, the *prima facie* validity of which was rebutted by the trustee's presentation of sufficient evidence to require that DeLorean come forward and prove his claim. While this evidence presented by the trustee may not have amounted to "badges of fraud" *per se*, their probative force, as discussed in part III of this Opinion, was at least equal to the allegations of the Proof of Claim itself. It was thus incumbent upon DeLorean to prove the validity and amount of his claim by a preponderance of the evidence. This Court agrees with the Bankruptcy Court that DeLorean failed that task for the reasons already enumerated.

In reaching this conclusion, the Court has considered DeLorean's concerns for his Fifth Amendment rights, but concludes that the Bankruptcy Court was sufficiently sensitive to these same concerns. To excuse DeLorean's failure of proof in connection with his claim as having resulted from a fear of relinquishing those Fifth Amendment rights would truly require condoning the use of the Fifth Amendment as a shield *and* as a sword, an unnecessary and undesirable result. See, e.g., Kaminsky, *Preventing Unfair Use of the Privilege Against Self-Incrimination in Private Civil Litigation: A Critical Analysis*, 39 Brooklyn L.Rev. 121 (1972).

For these reasons, and those expressed in part III of this Opinion, the Bankruptcy Court's April 13, 1984 "Memorandum and Order Denying Secured Claim" is AFFIRMED IN FULL.

For the reasons expressed in part IV of this Opinion, the award of sanctions in the Bankruptcy Court's February 16, 1984 "Order Quashing Subpoenas and Awarding Sanctions" is REVERSED AND VACATED.

So ordered.